[Cite as *Kurutz v. cleveland*, 2018-Ohio-2398.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 105899

**CARRIE KURUTZ**

PLAINTIFF-APPELLANT

vs.

**CITY OF CLEVELAND, ET AL.**

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-863172

**BEFORE:** Stewart, J., E.T. Gallagher, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 21, 2018

**FOR APPELLANT**

Carrie Kurutz, pro se
2606 Jay Avenue
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEES**

Barbara A. Langhenry
Director of Law
City of Cleveland

Carolyn M. Downey
Assistant Director of Law
601 Lakeside Avenue, Room 106
Cleveland, OH 44114

Justin M. Smith
J.M. Smith Co., L.P.A.
520 Tower East
20600 Chagrin Boulevard
Shaker Heights, OH 44122

MELODY J. STEWART, J.:

{¶1} When 2515 Company L.L.C. applied for a use variance to sell used motorcycles in a local retail business district within the city of Cleveland, appellant Carrie Kurutz, a local resident, objected on grounds that the proposed use would destroy the residential character of the neighborhood. Appellee city of Cleveland's Board of Zoning Appeals ("board") granted the variance, but with significant restrictions on the manner in which 2515 Company could operate the dealership. Kurutz appealed to the court of common pleas, but the court summarily denied her appeal, finding the board's decision to grant the variance was supported by a preponderance of reliable, probative, and substantial evidence. The primary issue in this appeal is whether the court of common pleas erred as a matter of law by so finding.

{¶2} Before reaching the primary issue on appeal, we consider several tangential matters. Kurutz first argues that the court's order affirming the board's decision was made without any analysis or recitation of the evidence.

{¶3} The court's judgment affirming the board's decision states:

> the Court, having considered the entirety of the record, does not find that the decision was unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.

This language tracks R.C. 2506.04:

> If an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.

Nothing more was required of the court. *See 3910 Warrensville Ctr., Inc. v. Warrensville Hts.,* 20 Ohio App.3d 220, 222, 485 N.E.2d 824 (8th Dist.1984) ("We find no support in [R.C. 2506.04] for appellant's proposition that the common pleas court is required to issue written factual findings in such appeals."); *McMillan v. Lakewood*, 8th Dist. Cuyahoga No. 105463, 2018-Ohio-94, ¶ 21.

{¶4} We acknowledge that in *Vang v. Cleveland*, 8th Dist. Cuyahoga No. 104994, 2017-Ohio-4187, we reversed a court of common pleas decision in a zoning appeal for additional findings because we could not determine whether the trial court fulfilled its obligation under the statute to review the evidence. The problem noted in *Vang* does not exist in this case: the issues on appeal to the court of common pleas were well-briefed, allowing us to conduct an adequate review of the legal issue raised before us. We thus distinguish *Vang*.

{¶5} Kurutz also argues that the court erred by affirming the board's decision because Thomas Gillespie, who through a different corporation owned 99 percent of 2515 Company, represented the limited liability corporation in the hearing before the board despite being a nonattorney (2515 Company was represented by counsel in proceedings before the board, but counsel did not attend the hearing before the board). We agree with the city that Kurutz forfeited the right to raise this as an issue on appeal because she failed to raise it below. *Cleveland v. Cuyahoga Lorain Corp.*, 8th Dist. Cuyahoga No. 82823, 2004-Ohio-2563, ¶ 12.

{¶6} Kurutz next argues that the court should not have affirmed the board's decision because one of the board members willfully concealed a pecuniary conflict of interest in the application. This argument was not raised to the court below, so it is forfeited on appeal. In any event, the board member recused himself and did not vote on the application. Kurutz also argues that the recused board member swayed the outcome of the hearing by noting that his recusal meant that the request for a variance would need unanimous approval from the remaining three board members (one of the five board members did not attend the hearing). The recused board member merely stated the obvious; he did not demonstrate any attempt to sway the outcome of the hearing despite his recusal.

{¶7} The main issue raised on appeal is that the court erred by affirming the board's decision that 2515 Company demonstrated a need for the variance. Kurutz maintains that 2515 Company failed to show by a preponderance of the evidence that it would suffer a hardship if the board did not grant the requested variance.

**{¶8}** In administrative appeals, "[t]he judgment of the court [of common pleas] may be appealed by any party *on questions of law* as provided in the Rules of Appellate Procedure * * *." (Emphasis added.) R.C. 2506.04. This intentionally deferential standard of review specifically denies the court of appeals the "power to weigh the evidence." *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 148, 147, 735 N.E.2d 433 (2000). Instead, we are limited to finding, as a matter of law, that the court's decision is not supported by a preponderance of reliable, probative, and substantial evidence. *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 27. In this context, a reversal "as a matter of law" can occur only when, having viewed the evidence most favorably to the decision, there are no facts to support the common pleas court decision. Just as "[t]here is a distinction between review for weight of the evidence in the courts of appeals and review by the Supreme Court of matters of law[,]" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 18, so too is there a distinction under R.C. 2506.04 when the court of common pleas is the primary reviewing court and the court of appeals is the secondary reviewing court in an administrative appeal.

{¶9} Despite this narrow standard of review, the Supreme Court has held that "[w]ithin the ambit of 'questions of law' for appellate court review would be abuse of discretion by the common pleas court." *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984), fn. 4. *See also Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 14. Included under this standard would be review of purely discretionary decisions made by the court of common pleas relating to the scope of the administrative appeal and, in particular, whether to go beyond the administrative transcript and allow additional evidence in the appeal. *See* R.C. 2506.03(A); *Brenneman Bros. v. Allen Cty. Commrs.*, 2013-Ohio-4635, 3 N.E.3d 1231, ¶ 44 (3d Dist.). What is not included under this standard of review is the "discretionary" weighing of facts that is to be applied to a legal standard. This standard of review is akin to the standard applied in criminal cases with motions to suppress evidence: the trial court determines the facts and then applies the established law to those facts. To be clear, the prohibition on a court of appeals weighing evidence in an administrative appeal means that it cannot find that the court of common pleas abused its discretion in the way it weighed evidence.

{¶10} With these precepts in mind, we turn to Kurutz's argument that the court erred by affirming the board's decision to grant a use variance.

{¶11} The property is located in a local retail district. The city defines a "local retail district" as "a business district in which such uses are permitted as are normally required for the daily local retail business needs of the residents of the locality only." Cleveland Codified Ordinances 343.01(a). 2515 Company does not dispute that a motorcycle falls within the definition of an automobile, *see* Cleveland Codified Ordinances 325.481, nor does it dispute that the retail sale of automotive vehicles is prohibited in a local retail district — such sales are only permitted in a general business district (assuming that the gross weight of the vehicle does not exceed 6,000 pounds). *See* Cleveland Codified Ordinances 343.11(b)(2)(I)(4). After the city's zoning administrator denied 2515 Company's application for a permit to use the building as a "motor vehicle sales facility," 2515 Company sought a use variance.

{¶12} The city grants the board the power, in a specific case, to vary or modify the application of the zoning code "[w]here there is practical difficulty or unnecessary hardship in the way of carrying out the strict letter" of the code. Cleveland Codified Ordinances 329.03(a). That power is limited, however, to a showing that (1) the practical difficulty or unnecessary hardship is peculiar to the premises and is not shared by other premises in the district and (2) and application of the code creates a difficulty or hardship caused by a strict application of the provisions of the zoning code not generally shared by other land or buildings in the same district. Cleveland Codified Ordinances 329.03(b)(1).

{¶13} The record shows that the building at issue was built in 1924, with a bowling alley in the basement, a post office on the first floor, and a hotel on the second and third floors. In 1952, the first floor was converted for use in the manufacture of storm windows. In 1982, the city granted a variance request to use the first floor for retail and continue using the second and third floors as a hotel. The second and third floors have since been renovated to form eight apartments.

{¶14} 2515 Company bought the building in May 2011, although Gillespie told the board that "I've been working on this since 2008." He told the board that one-half of the first floor of the building is occupied by a clothing retailer whose merchandise is "based around a motorcycle kind of lifestyle, but it's not motorcycle clothing in there." Gillespie told the board that the retailer was looking to sell used motorcycles by "taking his very high-ended [sic] inventory and basically staging it as art that's for sale in the place." The retailer was said to be "basically decorating the space with motorcycles that will also be for sale." The retailer would not service any motorcycles at the location (the retailer had other locations) and customers would not be able to test drive any of the motorcycles. The retailer told the board that he could easily display 10 to 15 motorcycles in the space and that the space would look empty if he did not display the motorcycles.

{¶15} Objections to the application for a variance were voiced by Kurutz and several other residents of the neighborhood. They noted that the retailer's grand opening was attended by "50 to 100 motorcyclists who rode their motorcycles down the sidewalk," requiring the police to "break up the activity and close it down." They were concerned that increased motorcycle traffic, and the noise generated by the motorcycles, would be incompatible with the residential neighborhood.

{¶16} The board granted the variance, finding that "refusal of the variance will create an unnecessary hardship particular to the property such that there will be no economically feasible use without the variances[.]"  The board did, however, set several restrictions agreed to by the retailer: the retailer would be open Wednesday through Sunday, opening at 11 a.m. and closing no later than 7 p.m.; it could not service motorcycles; it could not sell motorcycle parts; it could not allow test drives of motorcycles; and it could only display 15 motorcycles at any given time.

{¶17} At no point in 2515 Company's presentation to the board did it touch on any aspect of how the denial of a use variance to sell motorcycles would cause it unnecessary hardship "not generally shared by other land or buildings in the same district."  A representative of a local neighborhood group told the board that the retailer "has been a really, really great addition to the neighborhood.  They bring retail to a street that is very, very difficult to attract retail spaces to."  The representative told the board that the neighborhood group works hard to bring retailers into the neighborhood because "the retail uses that we have are frequently hanging by a thread."

{¶18} Gillespie agreed with the neighborhood representative that it would be difficult to "rent five thousand square feet, which is the total space, to retailers out there.  No one will make it."  Nevertheless, Gillespie admitted that he could have put the space to other uses, but said that doing so would not be in keeping with his vision for the neighborhood: "I can put a bar in there tomorrow.  I could put a bar in any of these things because there's enough cash flow and enough people walking around, but we as a community are trying not to do that and this is a perfect solution."  He told the board that "I'm not going to lease [the space] to a tenant or use that doesn't complement the rest of the neighborhood, complement the vision of the street, complement all the efforts I have put into the building itself."

**{¶19}** Gillespie's comments show that this is not a case where an unnecessary hardship would exist because the space could not be put to any other use. His remarks made it clear that he could find other tenants for the space, but was being selective with his tenants to preserve the character of the neighborhood. This no doubt explains why Gillespie gave no indication that he would suffer any financial hardship if the requested variance was denied. *See, e.g., Kurtock v. Cleveland Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 105755, 2017-Ohio-8890, ¶ 20 (use variance to play live music granted because business would be unable to survive economically without the substantial higher revenue brought in on days in which live music was performed). The goal of preserving the character of the neighborhood may be laudable, but that goal is not a basis for finding that an unnecessary hardship existed sufficient to grant a use variance. We therefore conclude that this is the rare case where there was no evidence at all to support the court's finding that there was reliable, probative, and substantial evidence to support the board's decision to grant the use variance. The fourth and fifth assignments of error are sustained.

**{¶20}** Judgment reversed and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, JUDGE

EILEEN T. GALLAGHER, P.J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, J., DISSENTING:

{¶21} I respectfully dissent. Although Kurutz offered a passionate argument and intends the best for her local community in continuing to challenge the use variance granted to the local business, she has not asked us to consider Gillespie's remark about filling the space with a bar "tomorrow" as being dispositive of this appeal. She has not referenced it in her briefing, let alone claimed that the remark definitively demonstrates the absence of an unnecessary hardship when considered in conjunction with the remaining evidence.

{¶22} Her entire argument, in the issues advanced in the fourth and fifth assignments of error, is based on her conclusion that there is no evidence supporting the board's decision to grant the use variance because (1) the owner of the retail space was aware of the zoning restrictions when the premises was leased to Whiskey Grade; (2) the property is located on a different street than described by Gillespie; (3) Gillespie erroneously described the area as being a commercial district instead of residential; and (4) the owner of Whiskey Grade did not present evidence at the hearing. Further, Kurutz contends that the local retail restrictions permit several uses, and therefore, no unnecessary hardship can be demonstrated — essentially claiming that a zoning ordinance must foreclose any and all uses of the property before an unnecessary hardship can be found.

{¶23} Kurutz's briefing, filed pro se, is limited, and she has not demonstrated the existence of reversible error. App.R. 16(A)(7). Further, the issue found dispositive by the majority was not advanced in the appellate briefing. The appellees have not been afforded an

opportunity to brief the legal and factual analysis underlying the majority's conclusion. *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.2d 888, ¶ 21.   I would affirm.