[Cite as *McClarty v. Greene Metro. Hous. Auth.*, 196 Ohio App.3d 256, 2011-Ohio-4459.]

IN THE COURT OF APPEALS OF GREENE COUNTY, OHIO

|  |  |  |
|---|---|---|
| McCLARTY, | : | |
|      Appellant, | : | C.A. CASE NO. 2011-CA-30 |
| v. | : | T.C. CASE NO. 10-CV-493 |
| | : | (Civil Appeal from |
| GREENE METROPOLITAN | | Common Pleas Court) |
| HOUSING AUTHORITY, | : | |
|      Appellee. | | |

. . . . . . . . .

O P I N I O N

Rendered on the 2nd day of September, 2011.

. . . . . . . . .

Legal Aid of Western Ohio, Inc., Debra A. Lavey, and Kelli A. Bartlett, for appellant.

Mark J. Donatelli, for appellee.

. . . . . . . . .

GRADY, Presiding Judge.

{¶ 1} This is an appeal from a final order of the court of common pleas entered pursuant to R.C. 2506.04.

{¶ 2} Appellant, Clarissa McClarty, is a single mother of three children. She participates in the Section 8 Housing Choice Voucher program established by the United States Department of Housing & Urban Development ("HUD") and administered by appellee, the Green County Metropolitan Housing Authority

("GMHA"). Under the Section 8 program, participants are provided a voucher with which to pay their landlords some or all of their monthly rent. Because of her low-income level, all of McClarty's rent is paid by the voucher she receives from GMHA. McClarty also qualifies for Section 8 assistance in paying her utility bills. The amount of that assistance, which is paid to the participant by check, is also calculated on the basis of the participant's income.

{¶ 3} Participants who receive assistance in paying their utility bills must provide requested information to GMHA concerning their income and household size. Participants must complete and submit a number of forms requesting that information as part of an annual Section 8 recertification.

{¶ 4} McClarty began participating in the Section 8 program in 2007. In 2008, she notified GMHA that she was no longer receiving the child support she had reported before. That caused GMHA to increase the amount McClarty received for assistance in paying her utility bills.

{¶ 5} In March 2010, as part of McClarty's annual recertification, GMHA discovered from another source that McClarty's child-support payments had resumed in February 2009. GMHA's records indicated that McClarty had not reported that fact to GMHA. As a result, GMHA determined that McClarty had been overpaid in her utility bill assistance in the amount of $1,020.

{¶ 6} On March 12, 2010, GMHA sent a letter to McClarty, notifying her that her Section 8 Housing Code voucher assistance would terminate on April 30, 2010, due to her failure to report child-support income beginning in February 2009. GMHA also sent McClarty a repayment agreement, requiring monthly payments of $85 until the

$1,020 is repaid in full.

{¶ 7} McClarty requested an informal hearing with GMHA to contest her termination from the voucher program. McClarty testified that she believed that she completed and submitted a form alerting GMHA of the resumption in child-support payments, but conceded that she may have submitted the incorrect form. She also believed that the child-support agency had forwarded the payment information to GMHA. McClarty explained that she would never do anything to jeopardize her status as a participant in the housing-voucher program.

{¶ 8} On April 3, 2010, following a hearing, a hearing officer upheld the termination of assistance because McClarty "did not have documentation present verifying that she had reported the support to GMHA." McClarty filed a notice of appeal in the Greene County Common Pleas Court pursuant to R.C. Chapter 2506. On April 13, 2011, the common pleas court found in favor of GMHA. McClarty filed a timely notice of appeal.

ASSIGNMENT OF ERROR

{¶ 9} "The trial court erred as a matter of law by upholding Ms. McClarty's termination from the Section 8 housing choice voucher program when GMHA failed to prove that she intended to deceive or mislead them."

{¶ 10} R.C. 2506.04 provides:

{¶ 11} "If an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and

probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."

{¶ 12} In *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147-148, the Supreme Court explained the standard of review to be applied in reviewing R.C. Chapter 2506 administrative appeals:

{¶ 13} "Construing the language of R.C. 2506.04, we have distinguished the standard of review to be applied by common pleas courts and courts of appeals in R.C. Chapter 2506 administrative appeals. The common pleas court considers the 'whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. [Citations omitted.]

{¶ 14} "The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is *'more limited* in scope.' (Emphasis added.) *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 30, 465 N.E.2d 848, 852. 'This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on "questions of law," which does not include the same extensive power to weigh "the preponderance of substantial, reliable and probative

evidence," as is granted to the common pleas court.'   Id. at fn. 4."

{¶ 15} Section 982.551(b), Title 24, C.F.R., applies to Section 8 programs and provides:

{¶ 16} "*Supplying required information*—(1) The family must supply any information that the PHA or HUD determines is necessary in the administration of the program, including submission of required evidence of citizenship or eligible immigration status (as provided by 24 CFR part 5).   'Information' includes any requested certification, release or other documentation.

{¶ 17} "(2) The family must supply any information requested by the PHA or HUD for use in a regularly scheduled reexamination or interim reexamination of family income and composition in accordance with HUD requirements.

{¶ 18} "* * *

{¶ 19}   "(4) Any information supplied by the family must be true and complete."

{¶ 20} Section 982.552(c), Title 24, C.F.R., provides:

{¶ 21} "*Authority to deny admission or terminate assistance*—(1) *Grounds for denial or termination of assistance.*   The PHA may at any time deny program assistance for an applicant, or terminate program assistance for a participant, for any of the following grounds:

{¶ 22} "(i) If the family violates any family obligations under the program (see § 982.551).   See § 982.553 concerning denial or termination of assistance for crime by family members.

{¶ 23} "* * *

{¶ 24} "(iv) If any member of the family has committed fraud, bribery, or any

other corrupt or criminal act in connection with any Federal housing program (see also § 982.553(a)(1))."

{¶ 25} GMHA terminated McClarty's assistance under the voucher program because she failed to report child-support income she received beginning in February 2009. McClarty argues that her unintentional mistake should not result in termination of her assistance. In *Smith v. Hamilton Cty.*, Hamilton App. No. C-060315, 2007-Ohio-1725, the First District addressed whether every mistake or error by a participant in reporting information authorizes a housing agency to terminate assistance pursuant to Section 982.552(c), Title 24, C.F.R. The First District stated, at ¶ 24-25:

{¶ 26} "Thus [the housing agency] could have only terminated Smith's Section 8 housing voucher if she had violated any family obligations under Section 982.551, Title 24, C.F.R. or committed fraud, bribery, or any other corrupt or criminal act. Although fraud and the violation of a 'family obligation' are two separate and independent grounds for termination of Section 8 housing vouchers, we cannot broadly interpret the 'family obligation' provision of Section 982.551 to permit [the housing agency] to terminate a Section 8 participant's benefits for any and all errors or omissions arising from the failure to submit true or complete information.

{¶ 27} "Instead we agree with the reasoning of Judge T.S. Ellis, III, of the United States District Court for the Eastern District of Virginia, who in *Ellis v. Ritchie*[1] noted that if Section 982.552(c)(1)(i), Title 24, C.F.R. permits a public housing agency to

---

[1] *Ellis v. Ritchie* (E.D.Va.1992), 803 F.Supp. 1097.

terminate benefits for any violation of a 'family obligation,' the interpretation of Section 982.551(b)(4) that implies a requirement of truth and completeness for the submission of documentation 'would effectively permit the agency to terminate participants who make even trivial or minor errors in filling out required forms. Such an interpretation is unreasonable as it would render the fraud provision of [Section 982.552(c)(1)(iv)] superfluous and effectively relieve a public housing agency of the need to make a factual finding that a participant actually intended to deceive or defraud the agency. Indeed, it would permit the agency to rely solely on [Sections 982.552(c)(1)(i) and 982.551(b)(4)] in terminating benefits for both unintentional and intentional errors and omissions made in connection with recertification. Given that HUD promulgated [Sections 982.552(c)(1)(i) and 982.552(c)(1)(iv)] on the same date, the agency could not have intended that the latter provision swallow the former.' "

{¶ 28} The court of common pleas found:

{¶ 29} "The termination of Ms. McClarty's benefits was not for just any minor error or omission. The reporting, and subsequent nonreporting, of this income had a direct effect on the amount of Ms. McClarty's subsidy. By not reporting the child-support payments, Ms. McClarty was receiving benefits above and beyond what she would have been awarded. It is apparent that Ms. McClarty was aware of the reporting requirement, and its importance, as she signed the tenant reporting checklist and by reporting the loss of her child support payments in November 2009."

{¶ 30} HUD provides the Housing Choice Voucher Program Guidebook to local

housing authorities.[2] The purpose of the guidebook is to advise public-housing agencies ("PHAs") and other organizations providing services to PHAs, regarding the administration of the tenant-based subsidy programs. Chapter 22.2 of the guidebook provides:

{¶ 31} "It is important that PHA staff recognize the differences between unintentional and intentional misreporting. Particularly in cases of intentional misreporting, PHA staff must be able to evaluate the special circumstances and seriousness of the case to determine whether it is a case of fraud. PHAs must also establish policies and procedures for fair and consistent treatment of cases of intentional misreporting, abuse, and fraud. A policy that clearly defines circumstances under which a family or owner would be terminated from the program, but also allows the PHA to consider mitigating circumstances before terminating, is best."

{¶ 32} Later, in Chapter 22.2 of the guidebook, HUD identifies "[f]ailure to report changes as required, such as failure to notify the PHA of a change in family composition or income" as an error or omission rather than as fraud or abuse. Chapter 22.5 of the guidebook addresses situations where the family payment under the voucher program is incorrectly set too low. In such situations, the guidebook provides:

{¶ 33} "In cases where the error or omission is clearly the fault of the family, the family must repay the PHA within a reasonable period of time. If the amount owed is

_____

[2] The contents of the guidebook are available on the internet at www.hud.gov.

not repaid, the PHA may terminate the family's assistance."

{¶ 34} HUD's guidebook sets up an enforcement duality under which fraud and intentional abuse of the voucher program by tenants is dealt with harshly through immediate termination of the tenant's participation in the voucher program. On the other hand, tenants who make unintentional mistakes are given a reasonable period of time to repay amounts by which they were overpaid, while continuing to participate in the voucher program. The distinction implies the need for an inquiry and determination regarding the causes of the tenant's particular failure.

{¶ 35} GMHA terminated McClarty from participation in the Section 8 program because she failed to report the increase in her income in 2008. As a result, GMHA was induced to overpay the amount of assistance McClarty received to pay her utility bills. Fraud in the inducement exists when a person makes a knowing, material misrepresentation with the intent of inducing reliance by another, and that the other person relied upon that misrepresentation to his or her detriment. *Boesch v. Guarantee Title & Trust Co.* (1935), 18 Ohio Law Abs. 655.

{¶ 36} Neither the hearing officer nor the court of common pleas found that McClarty intended to deceive GMHA. There is evidence McClarty believed that she had submitted the proper information to GMHA, or that the Ohio Department of Job & Family Services had done so. While the common pleas court is correct that this mistake had a direct effect on the amount of McClarty's utility reimbursement checks, we, like the First District, cannot agree that her mistake allows the housing agency to terminate assistance pursuant to Section 982.552(c)(1), Title 24, C.F.R., absent a finding of an intent to deceive or a pattern of a conduct demonstrating serious

disregard of her family obligations under Section 982.551.

{¶ 37} The assignment of error is sustained. The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion, which should include a determination whether any failure by McClarty was intentional.

Judgment accordingly.

FAIN and DONOVAN, JJ., concur.