IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Allana MaCool | : | |
| | : | |
| v. | : | No. 1384 C.D. 2017 |
| | : | ARGUED: June 4, 2018 |
| Berks County Housing Authority, | : | |
| Appellant | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                     FILED:  July 30, 2018

The Berks County Housing Authority (Housing Authority) appeals from the September 13, 2017 Order of the Berks County Court of Common Pleas (Trial Court), granting the appeal of Allana MaCool (Tenant) and reinstating her Housing Choice Voucher Program (Program) benefits, which the Housing Authority had terminated for Tenant's violations of the terms and obligations of the Program.  After careful review, we reverse.

**Background**

The Program is more commonly known as the Section 8 Program, which provides housing assistance to low-income individuals and families.[1]  The Program is under the purview of the U.S. Department of Housing and Urban Development (HUD), but generally administered by local housing authorities – here, the Housing Authority.  24 C.F.R. § 982.1(a).  In administering the Program, the Housing Authority must comply with all HUD regulations and requirements.  24 C.F.R. §

---

[1] *See* 42 U.S.C. §§ 1404a-1437z-9.

982.52(a). The Housing Authority is required to adopt a written Administrative Plan that establishes local policies for administration of the Program in accordance with HUD requirements. 24 C.F.R. § 982.54.

Tenants participating in the Program must be annually recertified, which requires them to provide information to the Housing Authority on recertification forms to ensure their compliance with the Program rules and regulations. 24 C.F.R. § 982.516. A tenant's participation in the Program may be terminated for violating any family obligations set forth in the HUD regulations or the Housing Authority's Administrative Plan. 24 C.F.R. § 982.552(c)(1)(i). Notes of Testimony (N.T.), 9/12/17, Ex. No. 5, Administrative Plan, at 3. Those obligations at issue in the instant appeal include that a tenant provide "true and complete" information to the Housing Authority and that a tenant not engage in any "violent criminal activity" while participating in the Program. 24 C.F.R. § 982.551(b)(4),(l).

The Housing Authority's Administrative Plan essentially mirrors the language of the HUD regulations including the obligation that "[a]ny information supplied by the family must be true and complete," and that the Housing Authority will terminate a family's assistance if the family "has failed to comply with any family obligations under the [P]rogram." N.T., 9/12/17, Ex. No. 5, at 2-4.

Tenant has participated in the Program for approximately nine years. N.T., 9/12/17, at 4. On May 17, 2016, Tenant completed her annual 2016 recertification form, wherein she checked off a box indicating that neither she, nor any member of her household, had been arrested or convicted of a crime other than a traffic violation within the previous twelve months. N.T., 9/12/17, Ex. No. 1, Recertification Paperwork. On her 2017 recertification form, which was signed and dated May 9, 2017, Tenant again checked off the box indicating that neither she nor any member

2

of her household had been arrested or convicted of a crime, other than a traffic violation, within the previous twelve months. N.T., 9/12/17, Ex. No. 2, Recertification Paperwork. When Tenant signed her recertification form for both years, she certified that the statements on the form were true to the best of her knowledge and belief and that she understood the statements would be subject to verification. *Id.,* Ex. Nos. 1-2. She further acknowledged that any false statements could result in her disqualification from the Program. *Id.*

In June 2017, as part of the recertification process, the Housing Authority performed a criminal background check on Tenant. N.T., 9/12/17, at 11. This background check revealed that Tenant had been arrested twice in 2016 and in 2017 pled guilty in a third criminal matter stemming from a 2015 arrest.[2] *Id.*, Ex. No. 3, Court Summary. As a result of Tenant's arrests, and her failure to provide true and complete information on her recertification forms, the Housing Authority notified

---

[2] Tenant was arrested on August 31, 2016 for violating Sections 3802(a)(1) (driving under the influence (DUI)), 3802(b) (DUI), 1543(a) (driving while operating privilege suspended or revoked), 3361 (driving vehicle at safe speed), and 3714(a) (careless driving) of the Vehicle Code, and Section 4304(a)(1) of the Crimes Code (endangering welfare of children), 75 Pa.C.S. §§ 3802(a)(1), 3802(b), 1543(a), 3361, and 3714(a); 18 Pa. C.S. § 4304(a)(1). N.T., 9/12/17, Ex. No. 3, Court Summary, at 2. These charges were docketed at CP-06-CR-0004548-2016. *Id.* Tenant pled guilty on March 3, 2017 to one count each of endangering the welfare of a child, DUI, and driving while operating privilege is suspended or revoked. *Id.* The remaining charges were dismissed. *Id.*

Tenant was arrested on October 11, 2016 and charged with violating Sections 2709(a)(1) (harassment) and 5503(a)(1) (disorderly conduct) of the Crimes Code, 18 Pa. C.S. §§ 2709(a)(1), 5503(a)(1). *Id.* at 1. These charges were docketed at CP-06-CR-0005206-2016. The record does not contain dispositional information for these charges.

Separate charges for DUI and careless driving were docketed at CP-06-CR-0006129-2015. *Id.* at 1-2. Tenant pled guilty to one count of DUI on March 3, 2017. *Id.* The remaining charges were dismissed. *Id.* The record does not reflect an arrest date for these charges.

3

Tenant that she would be removed from the Program effective July 31, 2017. *Id.*, Ex. No. 6, Notice of Termination.

Tenant appealed the termination, and a hearing was held on June 22, 2017. *Id.*, Ex. No. 9, Informal Hearing Decision, at 1. Tenant, her mother-in-law, and Housing Authority case manager Carolina Hernandez attended the hearing. *Id.* Tanya Nelson, the Housing Authority's Executive Director, was the hearing officer. No transcript was made of this proceeding. *Id.* Following the informal hearing, Ms. Nelson upheld the Housing Authority's decision to terminate Tenant's participation in the Program due to Tenant's false statements on her recertification forms and her arrests for disorderly conduct and harassment. *Id.* at 2.

Tenant filed a timely appeal to the Trial Court, which held a *de novo* hearing[3] on September 12, 2017.

Tenant appeared *pro se* at the hearing. Tenant did not dispute her various arrests, but maintained she had reported the arrests to her former caseworker, Sandra Miller, by leaving Ms. Miller a voicemail, with the intent that she would then "discuss it in her office." N.T., 9/12/17, at 7. Tenant believed that by leaving a voicemail she satisfied her reporting obligations. *Id.*

Ms. Hernandez testified on the Housing Authority's behalf and presented evidence about Tenant's arrests, Tenant's failure to disclose those arrests on her

---

[3] Where a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal *de novo*, remand the proceedings to the agency for the purpose of making a full and complete record, or for further disposition in accordance with the order of the court. 2 Pa.C.S. § 754(a). Where the Trial Court conducts a hearing *de novo*, it must weigh the evidence and make its own findings of fact and conclusions of law. *McLaughlin v. Centre Cty. Hous. Auth.*, 616 A.2d 1074, 1075 (Pa. Cmwlth. 1992). Given the absence of a record from the first informal hearing, the Trial Court elected to hold a *de novo* hearing.

4

recertification forms, and other evidence challenging Tenant's assertions that she reported her arrests to Ms. Miller via voicemail.

At the conclusion of the hearing, the Trial Court granted Tenant's appeal from the bench, stating:

> I'm not convinced that even when [Tenant] filled out the form that she **meaningfully or purposely** left that box unchecked or checked it "no" and listed these offenses because she believed certainly the DUI's [sic] were not going to be considered, that included the child endangerment . . . It defies common sense for someone in her position to give, given all these facts, to fill out that form wrong knowing that she's going to be removed from the [P]rogram, at least to me . . . I don't believe that she **intended** to lie on that form.
>
> **I think an argument could be made that you [Housing Authority] followed the procedures that you have. And I think you did it right.** But I think in the criminal law there has to be intent. And even though this necessarily, within the criminal context [sic], I don't believe that [Tenant] intended to lie on that form, and I don't believe that. Even if she had provided that information, I don't believe that the Housing Authority would have terminated her Section 8 assistance.
>
> So I'm going to grant the appeal, and we can go from there. I'm sorry. **You [Housing Authority] did your job correctly. Okay. You did what you were supposed to do. And you followed the rules.** I think this is the right thing to do. My job at the end of the day is to do the right thing, for what it is worth. Thank you.

*Id.* at 28-29 (emphasis added).

On September 13, 2017, the Trial Court memorialized that decision in a single-sentence Order, which granted Tenant's appeal. The Housing Authority

5

timely appealed to this Court. The Trial Court then issued a Pa.R.A.P. 1925(a) Opinion (Rule 1925(a) Opinion) in support of its Order.

## Issues

On appeal,[4] the Housing Authority argues that: 1) the Trial Court erred when it concluded the Housing Authority was required to show Tenant *intended* to violate the Housing Authority's Administrative Plan; 2) the Trial Court's findings of fact are not supported by substantial evidence; and 3) the Trial Court erred when it failed to issue formal findings of fact and conclusions of law.

## Discussion

First, we address whether the Trial Court erred in concluding that the Housing Authority had the burden of proving that Tenant *intended* to violate the Program rules and regulations before terminating her from the Program.

At the conclusion of the hearing, the Trial Court specifically found that Tenant did not **intend** to provide false information on the recertification forms, and thus the Housing Authority could not remove her from the Program.[5] Additionally, in its Rule 1925(a) Opinion, the Trial Court stated that "[i]t is reasonable to interpret the

---

[4] Our scope of review is limited to determining whether constitutional rights have been violated, or whether the Trial Court committed an abuse of discretion or error of law. *McLaughlin*, 616 A.2d at 1074 n.3. "The [T]rial [C]ourt abuses its discretion if its findings are not supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *K. Hovnanian Pa. Acquisitions, LLC v. Newtown Twp. Bd. of Supervisors*, 954 A.2d 718, 722 n.1 (Pa. Cmwlth. 2008).

[5] The Trial Court also appears to have conflated the burden of proof in a criminal prosecution with the burden of proof in this administrative matter when it stated, "I think in the criminal law there has to be intent. And even though this necessarily, *within the criminal context* [sic], I don't believe that [Tenant] intended to lie on that form, and I don't believe that." N.T., 9/12/17, at 28-29 (emphasis added). However, we will not address the Trial Court's apparent misapplication of the law in this regard, but will focus on the issue of whether proof of "intent" is necessary in the enforcement of the specific HUD regulations at issue.

[HUD] regulations[6] to require that a failure to report be knowing and intentional." 1925(a) Opinion at 7. In support of this statement, the Trial Court relied on *McClarty v. Greene Metropolitan Housing Authority*, 963 N.E.2d 182 (Ohio Ct. App. 2011).

In *McClarty*, the petitioner/tenant faced termination from the Program due to her failure to report child support payments, in violation of the requirement in Section 982.551(b)(4) of the HUD regulations that a participant provide "true and complete" information. *McClarty*, 963 N.E.2d at 183-184. The *McClarty* court relied on a HUD guidebook that was made part of the record, which emphasized that housing authority staff should "recognize the difference between unintentional and intentional misreporting." *Id.* at 185. The *McClarty* court interpreted the guidebook as providing an enforcement scheme that provided leeway to "tenants who make unintentional mistakes." *Id.* at 186. The *McClarty* court took the language of this HUD guidebook to mean that Section 982.552(c)(1) of the HUD regulations, which provides for termination of assistance for violation of any of the family obligations set forth in Section 982.551 of the HUD regulations, requires "a finding of an intent to deceive or a pattern of conduct demonstrating serious disregard of [the] family obligations under 24 C.F.R. § 982.551." *Id.* Noting that neither the housing authority hearing officer, nor the trial court, found that the tenant intended to deceive the housing authority, the *McClarty* court reversed the order of the trial court and remanded the matter for a determination of the tenant's intent. *Id.*

We find the *McClarty* case inapposite and non-binding for the following reasons. First, we are not bound by the precedent of an Ohio appellate court.

---

[6] While the Trial Court's Rule 1925(a) Opinion did not specify which regulations applied, we assume the Trial Court was referring to Section 982.551(b)(4) of the HUD regulations, which requires a participant in the Program to provide true and complete information.

Additionally, the *McClarty* court relied on evidence that was neither considered, nor part of the record, in the instant matter, namely, a HUD guidebook.

Furthermore, based on the plain language of the HUD regulations, we conclude that the regulations do not require a finding of intent. The object of regulatory interpretation is to ascertain and effectuate the intention of the drafter. *Freedom Med. Supply, Inc. v. State Farm Fire & Cas. Co.*, 131 A.3d 977, 983 (Pa. 2016). Where the regulatory language is ambiguous, this Court may resolve the ambiguity by analyzing the regulatory history. *Id.* at 984. However, no such ambiguity exists here. As stated earlier, Section 982.551(b)(4) plainly provides that "[a]ny information supplied by the family must be true and complete." 24 C.F.R. § 982.551(b)(4). Section 982.552(c)(1)(i) further provides that the Housing Authority may terminate assistance "[i]f the family violates **any** family obligations under the [P]rogram (see § 982.551)." 24 C.F.R. § 982.552(c)(1)(i) (emphasis added).

A review of the regulatory history of these pertinent HUD regulations further supports the conclusion that the regulations do not require proof of intent.

On July 3, 1995, HUD published a proposed rule[7] that revised and renumbered several regulations governing the Program, including Sections 982.551 (proposed statement of family obligations) and 982.552 (the ability of a housing authority to terminate assistance for violation of family obligations). *See* Certificate and Voucher Programs Conforming Rule, 60 Fed. Reg. 34,684 (July 3, 1995). In its publication,

---

[7] Federal Regulations are enacted pursuant to the Administrative Procedures Act. 5 U.S.C. §§ 500-596. Section 553 of the Administrative Procedures Act sets forth the rule-making process. Notice of proposed rulemaking is published in the Federal Register. *See* 5 U.S.C. § 553(b). A comment period follows during which interested persons are afforded the opportunity to respond to the proposed rule. 5 U.S.C. § 553(c).

8

HUD addressed comments that it had received in response to the proposed rule.[8] These comments suggested that a violation of family obligations might be unintentional, minor, or beyond the family's control and recommended that a housing authority should only terminate housing assistance because of serious or repeated violations of the family obligations.  *Id.*  However, HUD expressly declined to adopt the recommendation, stating that:

> [a]ll family obligations are important.  The family is responsible for compliance with all family obligations, and **the [housing authority] may terminate assistance for any violation**.  To terminate assistance, the [housing authority] must show that the family has committed the violation charged.  In general, the [housing authority] should not be required to show also that the violation of family obligations is "serious or repeated[."]  To add this requirement would complicate and discourage the enforcement of program requirements . . . **If the family has violated a program obligation, the [housing authority] has discretion to terminate assistance on the facts of the particular case.**

*Id.* (emphasis added).

This response by HUD reveals that while a housing authority has discretion in deciding when to terminate a tenant from the Program, "the [housing authority] may terminate assistance for any violation" as long as the housing authority shows that "the family has committed the violation charged."[9]

---

[8] The Federal Register does not identify the commenters.

[9] The Housing Authority further argues that *McClarty* is inapplicable because that court relied on regulations which have since been rescinded.  However, the Housing Authority misstates the regulations upon which the *McClarty* court relied.  The *McClarty* court relied on the current regulations, specifically, 24 C.F.R. §§ 982.551 and 982.552.

9

Here, there is no dispute that Tenant violated the HUD rules and regulations. Tenant provided false information on her 2016 and 2017 recertification forms despite being arrested twice and pleading guilty in a third criminal matter during the relevant time periods. Whether or not she intended to falsify these forms is irrelevant, and the Trial Court erred in concluding otherwise. For this reason alone, the Housing Authority had the right to remove Tenant from the Program.

We next address the Housing Authority's claim that the Trial Court erred in concluding that the Housing Authority would not have removed Tenant from the Program even if she **had** truthfully disclosed her arrests on the recertification forms. The Housing Authority argues that this finding was not supported by substantial evidence. We agree.

The only evidence in the record regarding whether Tenant would have been terminated had she reported her arrests can be gleaned from the following testimony of Ms. Hernandez:

> [Housing Authority's Counselt]: Do you know as you sit here today, if they had been reported, are you able to say whether or not her voucher would have been terminated?
>
> [Ms. Hernandez]: No decisions are based on open cases because we couldn't know the outcome, only on what's charged, either guilty . . . .
>
> [Trial] Court: So what charge would have constituted something meaningful if the open charge[s] are not . . . .
>
> [Ms. Hernandez]: She has two charges of harassment and . . . .

10

[Trial] Court: I think the question is would those, if you had a chance to look into those, would they fall within the category of -- I forget what you call it -- criminal activity?

[Ms. Hernandez]: They do fall under that category.

. . .

[Trial] Court: Let me ask a similar question. If [Tenant] disclosed those to you now, she checked the box and said yes, it's this, this, and this, would . . . her Section 8 assistance [be] canceled?

[Ms. Hernandez]: It currently is.

[Trial] Court: Say we are doing this right now. She checks it off and lists it. Does she lose her assistance?

[Ms. Hernandez]: She can't take those charges away.

[Trial] Court: No. I'm saying the checks. If she's [sic] lists those and it comes on your desk, is she terminated?

[Ms. Hernandez]: She would be.

[Trial] Court: Not maybe? She would be?

[Ms. Hernandez]: (Nodding head vertically.)

N.T., 9/12/17, at 21-22.

This testimony shows that the Housing Authority would have terminated Tenant from the Program even if she had disclosed her arrests and convictions on her recertification forms. Consequently, the Trial Court's finding to the contrary is not supported by substantial evidence.[10]

---

[10] We also find no substantial evidence to support Tenant's claim that she reported her arrests to Ms. Miller. The record reveals that Ms. Miller retired in April 2016, prior to Tenant's

11

**Conclusion**

The evidence unequivocally establishes that Tenant did not provide true and complete information on her recertification forms. Both HUD regulations and the Housing Authority's Administrative Plan provide that a tenant's participation in the Program may be terminated for failing to provide true and complete information to the Housing Authority and/or HUD. The Trial Court erred in concluding the Housing Authority was required to show Tenant "intended" to provide false information.

Further, the Trial Court's finding that the Housing Authority would not have terminated Tenant's participation in the Program had she disclosed her arrests and convictions is not supported by substantial evidence. Despite recognizing that the Housing Authority "did [its] job correctly," "did what [it] was supposed to do," and "followed the rules," the Trial Court improperly granted Tenant's appeal. Consequently, we reverse the Order of the Trial Court.[11]

_____
ELLEN CEISLER, Judge

---

August 31, 2016 and October 11, 2016 arrests. N.T., 9/12/17, at 9. Additionally, Ms. Hernandez moved into the office vacated by Ms. Miller, and Ms. Hernandez used the same telephone extension as Ms. Miller. *Id.* at 21. Ms. Hernandez testified that if someone had left a voicemail for Ms. Miller on her phone, she would have received it, and at no time did Tenant leave a voicemail indicating that Tenant had been arrested for, or convicted of, any crimes. *Id.* at 13, 21.

Furthermore, even assuming Tenant did leave *someone* a voicemail, Tenant offers no details whatsoever regarding *what* specifically she reported or *when* she reported it. Tenant faced three separate criminal matters during this time period, yet Tenant offered no testimony or evidence whatsoever regarding whether she attempted to report each arrest after it happened, or if she reported them all on a single occasion.

[11] Given our disposition of this matter, we need not address the Housing Authority's argument that the Trial Court erred in not providing sufficient Findings of Fact and Conclusions of Law pursuant to Section 555 of the Local Agency Law, 2 Pa.C.S. § 555.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allana MaCool                                 :
                                              :
            v.                                :   No. 1384 C.D. 2017
                                              :
Berks County Housing Authority,               :
                        Appellant             :

# O R D E R

AND NOW, this 30th day of July, 2018, the Order of the Court of Common Pleas of Berks County, dated September 13, 2017, is reversed.

_____
ELLEN CEISLER, Judge