[Cite as *Austin v. Cuyahoga Metro. Hous. Auth.*, 2019-Ohio-636.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 107247**

**THERESA AUSTIN**

PLAINTIFF-APPELLEE

vs.

**CUYAHOGA METROPOLITAN HOUSING AUTHORITY**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Administrative Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-17-877008

**BEFORE:** Jones, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** February 21, 2019

**ATTORNEY FOR APPELLANT**

Alejandro V. Cortes
Associate General Counsel
CMHA, Office of Legal Affairs
8120 Kinsman Road
Cleveland, Ohio 44104


**FOR APPELLEE**

Theresa Austin, pro se
1371 Lynn Park Drive
Cleveland Heights, Ohio 44121


LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Cuyahoga Metropolitan Housing Authority ("CMHA"), appeals the trial court's reversal of CMHA's decision to terminate plaintiff-appellee, Theresa Austin's ("Austin"), participation in CMHA's Housing Choice Voucher Program ("HCVP").

I.  Procedural History and Facts

**HCVP Overview**

{¶2} CMHA is a political subdivision of the state of Ohio that provides affordable housing to low-income individuals and families throughout Cuyahoga County. Congress established HCVP to assist such individuals and families and is funded by the United States Department of Housing and Urban Development (HUD).[1]   In general, HCVP participants find housing in the

---

[1]In addition to HCVP, CMHA also operates a low-income public housing program, in which families and individuals separately apply to live in CMHA-owned/managed housing units.

private sector and submit a request for tenancy approval to CMHA. CMHA calculates the total amount of rent to be paid for the unit and factors in the number of bedrooms that the participant is entitled to receive based on the number of household members in the family composition.

{¶3} HCVP participants generally pay 30 percent of their monthly income for rent and utilities, and CMHA pays the balance. The participant then enters into a lease agreement with the landlord; CMHA is not a party to these private lease agreements.

{¶4} Pursuant to 24 C.F.R. 982.552(c)(1)(i), CMHA *may* terminate family participation in the voucher program if the family violates a "family obligation" under the program. One of the obligations is the requirement to notify CMHA if a family member no longer resides in the subsidized unit. According to CMHA, this requirement is particularly important because the failure to report a move can result in the family being "over-housed," or when the agency pays more for rent for the family than it should be paying under federal law.

{¶5} The Code of Federal Regulations gives the agency the discretion to consider the following:

> [i]n determining whether to deny or terminate assistance because of action or failure to act by members of the family:
>
> * * *
>
> (i) * * * all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure.

24 C.F.R. 982.552(c)(2).

{¶6} When CMHA proposes to terminate family participation in HCVP for a violation of a family obligation, the family may request an administrative hearing to contest the decision.

Once the hearing is held, the administrative hearing officer issues a written decision that is mailed to the participant along with information about the participant's right to appeal the decision.

**The Austin Family**

{¶7} Austin became a participant in HCVP in 2012 and currently lives in a subsidized unit in Cleveland Heights. In October 2015, Austin executed a "Did You Know * * *" form with CMHA acknowledging that she received a copy of the document and "that an opportunity to discuss its contents has been afforded to me." The form listed, among other requirements, that "1. You must report changes in income and household composition **within 30 (thirty) days of the changes**. (Failure to report changes will result in proposal for termination for fraud and underreporting of income.)". (Emphasis sic.)

{¶8} In the fall of 2016, Austin was pregnant and lived in the subsidized unit with two minor children and two children who had reached the age of majority, Asia Hulett ("Hulett") and Darcell Jordan ("Jordan"). In December 2016, Austin, Hulett, and Jordan attended Austin's annual re-examination appointment to determine continuing eligibility for the voucher program. At the appointment, both Hulett and Jordan stated they were no longer living with their mother. Austin and Hulett executed a "Family Composition Form" to permanently remove Hulett from Austin's household composition. Hulett stated on the form that she was no longer residing in the subsidized unit as of October 1, 2016. Hulett also signed an affidavit giving her current address on Broadview Road in Cleveland.

{¶9} In January 2017, the voucher program sent Austin a Notice of Housing Assistance Termination, Termination of Housing Assistance Payment Contract, and Right to Informal Hearing Letter. The notice informed Austin that her housing assistance would be terminated as of March 31, 2017, because she failed to "provide true and complete information" regarding her

household composition and failed to promptly notify CMHA within 30 days that a family member no longer resided with her.

{¶10} Austin requested a hearing. On the undated hearing request form, which is part of the record, Austin stated that she had been trying to remove her two older children from the lease because they were not following her rules and add her baby to the lease, but she had not been able to reach her landlord.

{¶11} An informal hearing was held in February 2017. The hearing officer issued a written decision in which he summarized the hearing testimony. No transcript of hearing testimony has been filed.

{¶12} The hearing officer's decision stated as follows. Austin and Hulett testified at the hearing, but not under oath, that Hulett and Jordan still reside with their mother but they "come and go." Hulett and Jordan's belongings remain at the Cleveland Heights house, but since they "come and go," it would be best to remove them from the household composition. Austin stated that it would be devastating if she and her minor children were removed from the voucher program.

{¶13} The hearing officer determined that CMHA submitted insufficient evidence to show that Austin failed to provide "true and complete information" because it did not submit Austin's December 2016 Annual Recertification Assessment at the hearing. The hearing officer further determined that CMHA submitted sufficient evidence showing that Austin failed to "promptly notify" CMHA that Hulett had moved out of the unit. The hearing officer found that Austin and Hulett were "not credible" because their statements directly contradicted the Family Composition Form, in which Hulett attested that she moved out of her mother's place as of October 1, 2016, and Hulett's statement during the hearing that she was no longer a member of Austin's household.

As to Jordan, the hearing officer found that there was insufficient evidence to show that Austin failed to promptly notify CMHA that he no longer resided in the unit.

{¶14} The hearing officer concluded, by a preponderance of the evidence:

The termination for the ground stated in the Notice of Housing Assistance Termination, Termination of Housing Assistance Payment (HAP) Contract and Right to Informal Hearing Letter would be consistent with 24 CFR 982.551(h)(3) as Participant failed to promptly (within 30 days) notify CMHA that Asia Hulett no longer resides with her at the subsidized unit located * * * [in] Cleveland [Heights], Ohio since October 01, 2016.

{¶15} The hearing officer affirmed CMHA's decision to terminate Austin's participation in the program as of March 31, 2017. At the time of the hearing, Austin had three minor children living with her, including her newborn child.

{¶16} Austin appealed the administrative decision to the Cuyahoga County Court of Common Pleas. She moved to stay the enforcement of the administrative decision, which CMHA did not oppose. The court granted the motion and ordered that the stay "shall not be lifted and no action taken in enforcement of the administrative decision until such time that the court orders that the stay is lifted."

{¶17} Austin was represented in the trial court level by an attorney who unfortunately passed away during the pendency of the case. Austin proceeded pro se. In lieu of a formal brief, Austin submitted the following documentation: (1) a handwritten letter of explanation, (2) a letter from the Cleveland Metropolitan Bar Association noticing the death of her attorney, (3) CMHA appointment letters dated June 14, 2017, and July 10, 2017, (4) a letter from her landlord dated February 1, 2017, and (5) a copy of her revised lease, dated July 17, 2017, adding her newborn child and removing her oldest two children from the lease.

{¶18} In the February 1, 2017 letter from her landlord, which Austin had also submitted as

part of the administrative record, the landlord referred to Austin as an "excellent" tenant who "tries to follow all the rules." The landlord continued:

> If there has been some miscommunication regarding the lease and number of children I would hope that Ms. Austin will be allowed to provide the revised lease and stay in the program. With a new baby, she needs assistance more than ever, and if she is terminated, where would she go and how would she care for her family? The CMHA Section program has helped her and her family, and I hope that a technical issue will not end that relationship.

{¶19} On May 2, 2018, the court issued its judgment entry, reversing the hearing officer's decision:

> According to the decision, Ms. Austin "attempted to remove Asia Hulett from her household composition on December 20, 2016 beyond the 30 days requirement to report changes to the household composition." * * * Thus, Ms. Austin was purportedly 50 days late under CMHA's policy.
>
> The court considered the notice of appeal, record of proceedings, documents in support filed by Ms. Austin on July 31, 2017, brief in opposition filed by CMHA on August 22, 2017, and applicable law.
>
> Upon due consideration, the court finds that the decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. CMHA's strict application of policy regarding the timing of notification required when a family member moves out of a unit is unreasonable because it fails to take into account extenuating circumstances. Likewise, termination is permissive rather than mandatory under the law and it is unreasonable to terminate assistance due to a technical violation (late notification) where several other children remain in the unit and would be impacted by the termination. The decision is reversed.

{¶20} CMHA timely appealed the trial court's decision and assigns the following errors for our review:

I. The trial court erred when it relied on information that was not part of the record to reverse the administrative decision and committed error when it ignored evidence in the record that supported the decision to terminate Austin's participation in the program.

II. The trial court erred when it found that CMHA's strict application of its change in household composition policy was unreasonable and impermissibly places CMHA in the untenable position of having to decide what is and what is not extenuating circumstances that would warrant termination from the Housing Choice Voucher Program.

III. The trial court erred when it found that the decision to terminate Theresa Austin's participation in the [voucher program] was unconstitutional, illegal, arbitrary, or capricious in light of the fact that CMHA proceeded to terminate Austin's participation in the HCVP in accordance with valid and lawful HUD rules and regulations.

{¶21} Austin has not filed an appellee brief.

## II. Law and Analysis

**Administrative Appeal**

{¶22} The common pleas courts and the courts of appeals apply different standards of review for administrative appeals. *McMillan v. Lakewood*, 8th Dist. Cuyahoga No. 105463, 2018-Ohio-94, ¶ 16, citing R.C. 2506.04. In an appeal of an administrative agency's decision to the common pleas court, the trial court "'considers the 'whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.'" *McMillan* at *id.*, quoting *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). The standard of review "to be applied by an appellate court reviewing a judgment of a common pleas court in an R.C. 2506.04 appeal is narrower, more limited in scope, and more deferential to the lower court's decision." *McMillan* at ¶ 17, citing *Cleveland Clinic Found. v. Bd. of Zoning*

*Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 25. Our review under R.C. 2506.04 is limited to questions of law, "which does not include the same extensive power" as the trial court has to weigh the evidence. *Henley* at *id.*

**{¶23}** Because R.C. 2506.04 limits our review to questions of law, there are two fundamental principles that we must adhere to with respect to the evidentiary-based arguments advanced in administrative appeals. On evidentiary matters, appellate courts are limited to reviewing to determine whether the trial court's decision is unsupported by a preponderance of reliable, probative, and substantial evidence. *Cleveland Clinic Found.* at ¶ 27. "In this context, a reversal 'as a matter of law' can occur only when, having viewed the evidence most favorably to the decision, there are no facts to support" the trial court's decision. *Kurutz v. Cleveland*, 8th Dist. Cuyahoga No. 105899, 2018-Ohio-2398, ¶ 8. However, if the trial court considers evidence outside the administrative record by allowing additional evidence under the statutory scheme, the review of those determinations falls under the abuse of discretion standard of review. *Id.* at ¶ 9. Importantly, the prohibition on a court of appeals weighing evidence in an administrative appeal means that the appellate court cannot find that the court of common pleas abused its discretion in the manner in which it weighed evidence. *Id.*

**Trial Court's Review of the Evidence**

**{¶24}** In the first assignment of error, CMHA contends that the trial court erred when it relied on evidence outside of the record and ignored countervailing evidence that supported CMHA's decision to terminate Austin's participation in the voucher program.

**{¶25}** We begin our review emphasizing that it is not within our purview to reweigh the evidence, but rather we are to decide whether there were any facts to support the trial court's

decision as to that evidence which was in the administrative record and whether the trial court abused its discretion in considering facts outside the administrative record.

{¶26} The trial court noted that it based its decision, in part, on the documents Austin filed, pro se, in lieu of a more formal brief. These included: (1) Austin's handwritten letter of explanation; (2) a letter from the Cleveland Metropolitan Bar Association noticing the death of her attorney; (3) CMHA appointment letters dated June 14, 2017, and July 10, 2017; (4) a letter in support from her landlord; and (5) a copy of her lease, dated July 17, 2017, and signed by the landlord, adding Austin's baby to the lease.

{¶27} CMHA contends that the trial court erred in relying on this information because it was not in the administrative record. CMHA complains that the record is devoid of evidence that shows that Austin's failure to timely notify CMHA of a change in household composition was the result of her being in the late stages of her pregnancy or due to her medical incapacitation after the birth of her child.

{¶28} Austin's initial notice of appeal to the trial court, filed pro se, stated that, during the time in question, Austin was in the final months of pregnancy and immediate post-pregnancy, and medically incapacitated due to giving birth by caesarean section. Austin had an attorney who filed a notice of appearance, but he passed away after obtaining a stay of execution in the case. Austin then proceeded pro se. She filed a handwritten letter of explanation, which explained that at the time she was supposed to notify CMHA of the change in her household composition, she was eight months pregnant and in and out of the hospital. As mentioned, the trial court took into consideration both the notice of appeal and Austin's letter of explanation in making its determination.

{¶29} This court has held that it is within the trial court's discretion in an administrative

appeal "whether to go beyond the administrative transcript and allow additional evidence in the appeal." *Kurutz*, 8th Dist. Cuyahoga No. 105899, 2018-Ohio-2398, at ¶ 9. Again, the prohibition on a court of appeals weighing evidence in an administrative appeal means that it cannot find that the court of common pleas abused its discretion *in the manner* in which it weighed that evidence. *Id.*

{¶30} CMHA contends that Austin provided multiple conflicting stories to try and explain her failure to follow program rules and the trial court should have deferred to the hearing officer's determination on credibility. Again, the trial court, within its discretion, considered evidence other than the hearing officer's credibility determination. The court stated that it had considered the "whole record" and found that:

> CMHA's strict application of policy regarding the timing of notification required when a family member moves out of a unit is unreasonable because it fails to take into account extenuating circumstances. Likewise, termination is permissive rather than mandatory under the law and it is unreasonable to terminate assistance due to a technical violation (late notification) where several other children remain in the unit and would be impacted by the termination.

{¶31} CMHA contends that the trial court ignored the evidence that supported the agency's decision to terminate Austin from the voucher program. There is no evidence to support that contention. Each party presented countervailing evidence in support of their respective positions; again, it is not for this court to weigh that competing evidence or question the manner in which the trial court weighed the evidence. *Henley*, 90 Ohio St.3d at 147, 735 N.E.2d 433; *see also Vang v. Cleveland*, 8th Dist. Cuyahoga No. 106519, 2018-Ohio-3312, ¶ 10. The trial court clearly gave more weight to those factors that supported Austin's position.

**{¶32}** In light of the above, we find that the trial court did not err in its review of the evidence. The first assignment of error is overruled.

**CMHA Policy**

**{¶33}** In the second assignment of error, CMHA claims that the trial court erred when it found that CMHA's strict application of its own policy was unreasonable.

**{¶34}** CMHA contends that Austin's failure to notify it of a change in household circumstances was a serious offense and not a technical violation and the court should defer to the agency's expertise.

**{¶35}** In its judgment entry, the trial court noted that it would be "unreasonable to terminate assistance due to a technical violation (late notification) where several other children remain in the unit and would be impacted by the termination." CMHA argues that the late notification was not a technical violation because Austin knowingly did not promptly inform the housing authority of the change in household circumstances.

**{¶36}** In this assignment of error, CMHA concedes that it is not mandated to terminate a participant from HVCP for failure to follow the program's rules with regard to notification of a change in household circumstances (in the third assignment of error CMHA claims it was mandated to terminate Austin's participation in the voucher program). Although CMHA contends that the trial court's reversal of its decision places CMHA in the untenable position of deciding what qualifies as "extenuating circumstances," CMHA already has that discretion under 24 C.F.R. 982.552(c), which, as mentioned, allows the agency to consider "all relevant circumstances."

**{¶37}** CMHA cites to *McClarty v. Greene Metro. Hous. Auth.*, 196 Ohio App.3d 256,

2011-Ohio-4459, 963 N.E.2d 182 (2d Dist.). In *McClarty*, the appellate court considered HUD's HCVP guidebook in finding that a participant's failure to report an increase in her income did not allow for program termination absent a finding of an intent to deceive or a pattern of conduct demonstrating a serious disregard of family obligations. Chapter 22.2 of the guidebook provides that "[f]ailure to report changes as required, such as failure to notify the PHA[2] of a change in family composition or income" as an error or omission rather than as fraud or abuse. *McClarty* at ¶ 32. The *McClarty* court noted that the guidebook sets up an enforcement duality under which fraud and intentional abuse of the voucher program is dealt with harshly through immediate termination of participation in the program, but, in situations where participants make unintentional mistakes, they are able to continue their participation in the voucher program and repay amounts by which they were overpaid. *Id.* at ¶ 34. The court found that "[t]he distinction implies the need for an inquiry and determination regarding the causes of the tenant's particular failure." *Id.*[3]

{¶38} CMHA claims that *McClarty* is distinguishable because, here, Austin "knew" she was deceiving the agency. CMHA argues that Austin's knowledge is evidenced by the "Did You Know * * *" form she executed in 2015, which outlined the 30-day policy. The hearing officer did find Austin's (and her daughter's) statements were not credible, but the hearing officer also found that the agency did not show that Austin failed to provide "true and complete information" to the agency because CMHA did not submit the 2016 Annual Recertification Assessment at the hearing.

---

[2] Public Housing Agency

[3] We are cognizant that HUD's guidebook was not part of the record in this case. We find *McClarty* instructive, however, because it shows that additional authority exists giving CMHA discretion to consider extenuating circumstances before terminating a participant from the voucher program.

**{¶39}** At the time in question, Austin was a single mother in the late stages of pregnancy, who then gave birth by cesarean section. She had two other minor children residing with her and two older children that she was trying to remove from the lease because they were not following household rules. Austin was in and out of the hospital and the birth of the baby left her medically incapacitated during the time CMHA alleged she failed to report the change in household circumstances. Austin attempted, and was finally able, to add the baby to the lease; at this same time Austin wanted to remove her older two children from her household. Hulett averred she was no longer residing with her mother as of October 1, 2016; both Austin and Hulett informed the agency of this change in household composition on December 20, 2016.

**{¶40}** In *Vang*, 8th Dist. Cuyahoga No. 106519, 2018-Ohio-3312, at ¶ 7, this court considered an administrative appeal in a zoning board case: "Whether [the parties] arguments were supported by evidence is irrelevant. Even if we assume their arguments were supported with evidence, it is not the function of this court to reweigh conflicting evidentiary submissions in administrative appeals." The same is true in this case. CMHA is asking this court to reweigh the evidence and find that the court erred in how it considered the evidence in the record. Given our limited power of review, we are not permitted to do so.

**{¶41}** The trial court was limited to determining whether CMHA's decision was unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. We find that there were facts to support the trial court's decision, and the trial court did not abuse its discretion in considering the whole record.

**{¶42}** Accordingly, the second assignment of error is overruled.

**HUD Rules and Regulations**

**{¶43}** In the third assignment of error, CMHA argues that the trial court erred in reversing

its decision to terminate Austin from the voucher program because she was terminated in accordance with HUD Rules and Regulations.

{¶44} In this assignment of error, CMHA contends that the law mandates that (1) Austin promptly notify CMHA of the change in household composition and (2) CMHA terminate Austin if she violated that family obligation.

{¶45} The Code of Federal Regulations requires a participant to "promptly" notify the public housing agency if any family member no longer resides in the unit. 24 C.F.R. 982.551(h)(3). Although the Code does not define "promptly," CMHA's policy is that a participant is required to notify the agency within 30 days. 24 C.F.R. 982.552(c)(1)(i) provides that a public housing agency "*may* at any time deny program assistance for an applicant, or terminate program assistance for a participant, * * * [i]f the family violates any family obligations under the program." (Emphasis added.) Thus, contrary to CMHA's claim (but as they concede under the second assignment of error), CMHA was not required to terminate Austin for violating her obligations under the program. *Compare* 24 C.F.R. 982.552(b)(2) (a public housing agency must terminate benefits for any participant that is evicted for serious violations of the lease).

{¶46} In *Lipscomb v. Hous. Auth.*, 2015 IL App (1st) 142793, 45 N.E.3d 1138, 399 Ill.Dec. 148, the participant received a notice that she was being terminated from the voucher program because she failed to timely report changes in her family composition and income; the voucher program required that a participant report any changes within 30 days. The participant received an informal hearing at which the hearing officer affirmed the termination of benefits. The participant appealed, and the trial court reversed the hearing officer's decision. The court found that the hearing officer did not consider the participant's intent — "whether failure to disclose changes in the household was an unintentional error or omission or whether it was

intentional fraud." *Id.* at ¶ 7. The *Lipscomb* court found that although the participant failed to timely report that two of her children moved out, the hearing officer failed to consider relevant circumstances in determining whether the participant should be terminated from the program.

{¶47} The *Lipscomb* court differentiated reasons for which a housing authority is required to terminate families from the program from those grounds that are discretionary, including 24 C.F.R. 982.552(c)(1)(i). *Lipscomb* at ¶ 23. The court emphasized that, under Illinois law, a housing authority *must* "'consider some circumstances particular to the individual case' in a termination under subsection (c) because 'otherwise section 982.552's distinction between mandatory and discretionary terminations becomes meaningless.'" *Id.* at ¶ 28, quoting *Gaston v. CHAC, Inc.*, 375 Ill. App.3d 16, 25, 872 N.E.2d 38, 313 Ill. Dec. 278 (2007).

{¶48} In this case, although the hearing officer found Austin's and her daughter's unsworn testimony "not credible," there is no evidence that the hearing officer considered mitigating factors under 24 C.F.R. 982.552 such as the effect of termination on Austin and her three minor children. We are cognizant that 24 C.F.R. 982.552(c) gives the housing authority the discretion to consider relevant circumstances; unlike Illinois, it does not appear that Ohio has mandated that a housing authority consider relevant circumstances under this Code section. That said, we find *Lipscomb* instructive to the degree that we agree that without consideration of "relevant circumstances," 24 C.F.R. 982.552(c)'s distinction between mandatory and discretionary terminations appears meaningless. *See also Blizman v. Michigan State Hous. Dev. Auth.*, Mich.

App. Nos. 330184, 334484, 2017 Mich. App. LEXIS 1132 (July 18, 2017) (citing *Lipscomb* and concluding that the trial court did not clearly err when it concluded that the hearing officer abused its discretion when the hearing officer failed to consider mitigating circumstances as required by 24 C.F.R. 982.552(c)); *but see Bowman v. Des Moines Mun. Hous. Agency*, 805 N.W.2d 790, 799 (Iowa.2011) (24 C.F.R. 982.552(c) states "may" rather than "must," which gives the hearing officer discretion whether or not to consider mitigating factors.).

**{¶49}** In light of the above, the trial court did not err in reversing the agency's decision.

**{¶50}** The third assignment of error is overruled.

**{¶51}** The trial court's decision is supported by a preponderance of reliable, probative, and substantial evidence, and the trial court did not abuse its discretion in weighing the entire record.

**{¶52}** Judgment affirmed.


It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR