BUTZ et al., Appellees,

v.

TOWNSHIP OF DANBURY et al., Appellants.

[Cite as *Butz v. Danbury Twp.*, 186 Ohio App.3d 7, 2010-Ohio-179.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–08–057.

Decided Jan. 22, 2010.

Richard R. Gillum, for appellees.

John A. Coppeler, for appellants.

———————

PIETRYKOWSKI, Judge.

{¶ 1} Defendants-appellants, Township of Danbury, Ohio, and Danbury Township Board of Zoning Appeals ("BZA"), appeal the trial court's decision reversing the BZA's denial of an application for variances filed by plaintiffs-appellees, Jim Butz and Mary Butz. For the reasons that follow, the judgment of the trial court is affirmed.

{¶ 2} In September 2006, the Butzes purchased a single-story, single-family residence at 230 Elm Avenue, Lakeside, Ohio. The residence was and continues to be a nonconforming use of real estate. The residence is nonconforming in two respects: (1) the porch encroaches on the front-yard setback by approximately three feet and (2) there is no off-street parking. Because there are structures on either side of the Butzes' residence, off-street parking is simply unavailable unless the structure is torn down and rebuilt near the rear of the lot.

{¶ 3} At issue in this case are proposed additions of (1) 264 square feet of living space to the rear of the existing first-floor structure and (2) a 946–square–foot second story. It is undisputed that nothing in the plans would exacerbate the nonconforming aspects of the property that already exist; that is, all parties agree that whether or not the variance is granted, there will continue to be no off-street parking and a nonconforming setback. In addition, all parties agree that neither improvement, if approved, would result in any further infringement upon zoning-code requirements.

{¶ 4} In early 2007, the Butzes obtained all necessary approvals regarding the parking and setback requirements of the Lakeside Subdivision from the Lakeside Association Historic Preservation and Design Review Board and the Lakeside Association Municipal Services Committee. On March 23, 2007, the Butzes obtained the requested zoning permit from Danbury Township.

{¶ 5} Shortly after the permit was issued, however, the zoning inspector determined that the addition would not be in compliance with Section 1001.1 of the Danbury Township Zoning Resolution, which limits enlargement of a nonconforming building to no more than 20 percent of the floor area of the original building. As a result, the Butzes' permit was rescinded.

{¶ 6} The Butzes filed a new variance application on September 28, 2007. In this application, the Butzes sought two variances: one to allow no off-street parking, and the other to allow expansion of the residence in excess of 20 percent

of its floor area.[1] A hearing was held on the matter before the Danbury Township Zoning Board on October 17, 2007.

{¶ 7} At the hearing, the following testimony was presented.

{¶ 8} Jim Butz testified that his house is the only house on the street that is not a two-story house. He demonstrated, with photographic evidence, that his proposed parking setup was similar to that used by his neighbors and that nothing in the proposed additions was inconsistent with the design and size of neighboring homes. Addressing alleged concerns that the proposed improvements might block the neighbors' view of the lake, Butz showed, again with photographic evidence, that even without the improvements, there is no appreciable view of the lake from his backyard.

{¶ 9} The Butzes' architect, Daniel Frederick, testified that the proposed second floor creates "the square-footage issue" in violation of the zoning resolution but does not result in any additional violation of the setback requirement. Frederick further stated that the proposed additions on the first and second floors were designed to "fit in" with other homes in the neighborhood with respect to scale and architectural design.

{¶ 10} According to Frederick, one way to make the structure a conforming structure in terms of the setback requirements would be to take the porch down. He stated that this solution may not be desirable, however, because the front porch, if left standing, maintains the scale of the sidewalk and the existing pedestrian space.

{¶ 11} At the conclusion of Frederick's comments, the Butzes' attorney, Richard R. Gillum, stated that his clients realized from the outset that they would need a parking variance from Lakeside, but that the section of the zoning resolution that imposes limitations on the addition of square footage onto a structure that is otherwise noncomplying "[has] not traditionally been enforced."

{¶ 12} Opposition to the proposed variances was expressed by Benita Wales, a contiguous owner, along with John Chiles, also a contiguous owner, who submitted on behalf of himself and five other contiguous neighbors, including Wales, suggested findings of fact for the BZA. All but two of the contiguous neighbors were in attendance at the hearing.

---

1. Zoning Resolution Section 700.1(a) provides that "[t]here shall be provided at the time of the erection or enlargement of any main building or structure the following off-street parking spaces, with a minimum area of two hundred (200) square feet per parking space * * *." Section 700.2(b) additionally provides that "[n]o building shall be enlarged, rebuilt, or structurally altered to the extent of more than a fifty (50) percent addition in floor area unless there shall be provided the total number of off-street parking spaces required for the original use and its enlargement."

{¶ 13} The neighbors, through Chiles, stated the following in connection with their suggested findings of fact. First, they stated that there can be a beneficial use of the property, inasmuch as it can either be used "as it has been for the last 80 years," or it can be expanded in compliance with the zoning regulations. Next, they claimed that the variance request is "substantial," because it calls for an addition that is "7 times larger than the Danbury [Township] regulations allow for a non-compliant cottage." In addition, they complained that the granting of the variances would result in obstruction of "an open view and a wisp of a lake view."

{¶ 14} The neighbors further claimed that the Butzes purchased the property with knowledge of the zoning restrictions, because the Butzes are "educated people" and "Mr. Butz is an attorney." With respect to the question of whether the Butzes' predicament feasibly can be prevented through some method other than a variance, the neighbors claimed (without providing any evidence to substantiate these claims) that "[a] 1200 square foot addition to this 800 square foot cottage is functionally a new house," and that "[i]t would probably be cheaper to build a new house that is compliant with all of the zoning regulations."

{¶ 15} Chiles additionally expressed opposition to the granting of a parking variance for appellees, commenting on certain dangers that he fears might be realized if the requested variance is granted, as a result of cars being parked on the easement area in front of the Butzes' home. He further stated that "[t]here is no other house on that block where the only parking is on the easement."

{¶ 16} At the conclusion of the testimony, the BZA reviewed for itself the seven factors that the Ohio Supreme Court ruled in *Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, 23 OBR 212, 491 N.E.2d 692, must be considered in determining whether to grant a variance.[2] The resulting BZA findings of fact are in Italics below.

{¶ 17} "The factors or standards to be considered and weighed for an area variance include, but are not limited to the following:

{¶ 18} "1. Whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance.

{¶ 19} *"The property can still yield a reasonable return without the variance. They have other options. They could raze the cottage and rebuild in compliance with zoning. They could also still add on up to a total of 1000.8 square feet and be in compliance with zoning.*

{¶ 20} "2. Whether the variance is substantial.

---

**2.** These factors are incorporated into the zoning resolution at Section 901.3.

{¶ 21} *"The Board agrees with the applicant's [sic] facts regarding parking. The variance for the proposed addition would allow an increase of 150% which is substantial. It was stated in testimony this will not be the applicant's [sic] primary residence.*

{¶ 22} "3. Whether the essential character of the neighborhood would be substantially altered or whether the adjoining properties would suffer a substantial detriment as a result of the variance.

{¶ 23} *"The Board agrees with the applicant's [sic] statement but unfortunately it violates the resolution.*

{¶ 24} "4. Whether the variance would adversely affect the delivery of governmental services (for example, water, sewer, garbage).

{¶ 25} *"The only change at the front of the residence would be the addition of a second story and there would be a twelve foot addition in the rear. This in no way infringes on any easements, access for emergency vehicles, utilities, or other governmental services and therefore there would be no effect.*

{¶ 26} "5. Whether the property owner purchased the property with knowledge of the zoning restriction.

{¶ 27} *"Zoning was in effect when the property was purchased. The permit was issued on March 23, 2007 and revoked on March 27, 2007. Notification was made to the architect on that day because he was the one who had made application and to the Butzs via a letter on April 6, 2007.*

{¶ 28} "6. Whether the property owner's predicament feasibly can be prevented through some method other than a variance.

{¶ 29} *"The Board agrees with the applicant's [sic] statement regarding parking. The applicant [sic] has other options available to prevent this predicament as listed in item 1.*

{¶ 30} "7. Whether the spirit and intent behind the zoning requirements would be observed and substantial justice done by granting the variance.

{¶ 31} *"The spirit of zoning would not be observed by granting the variance. The property can and is being used."*

{¶ 32} The BZA voted unanimously to reject the requested variances. The Butzes appealed this decision to the Ottawa County Court of Common Pleas. The common pleas court reversed the board's decision, finding that it was not supported by a preponderance of "reliable, probative evidence adduced at the hearing" and, further, that it was "arbitrary and capricious" inasmuch as "[t]he BZA's own findings of fact do not support its ultimate decision." The court additionally found that the Butzes had established practical difficulties sufficient to support their request for the variances, and that enforcement of the zoning

code would unreasonably deprive them of the use of their property. Appellants appealed from the common pleas court decision, raising the following as their sole assignment of error:

{¶ 33} I. "The trial court erred in reversing the decision of the Danbury Township Board of Zoning Appeals to deny two variances sought by plaintiffs-appellees for expansion of a non-conforming structure beyond the percentage allowed under the zoning resolution and for a waiver of off-street parking requirements."

{¶ 34} This appeal is before us pursuant to R.C. Chapter 2506. R.C. 2506.04 provides:

{¶ 35} "[If an appeal is taken from an administrative decision] the court may find that the * * * decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by a preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the * * * decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure, and to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."

{¶ 36} The court of common pleas, in conducting its review of a zoning board decision, considers the whole record and determines whether that decision is illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. See *Henley v. Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147, 735 N.E.2d 433. Although the common pleas court engages in its own weighing of the evidence to determine whether there exists a preponderance of reliable, probative, and substantial evidence to support the agency's decision, *Dudukovich v. Hous. Auth.* (1979), 58 Ohio St.2d 202, 207, 12 O.O.3d 198, 389 N.E.2d 1113, in undertaking its review, the common pleas court must give deference to the administrative agency's resolution of evidentiary conflicts, *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 407 N.E.2d 1265, and may not blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise. *Dudukovich* at 207, 12 O.O.3d 198, 389 N.E.2d 1113. "The key term is 'preponderance.' If a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas must affirm the agency decision; if it does not exist, the court may reverse, vacate, modify or remand." *Dudukovich* at 207, 12 O.O.3d 198, 389 N.E.2d 1113.

{¶ 37} The standard of review to be applied by an appellate court in an R.C. 2506.04 appeal is "more limited in scope." *Henley* at 147, 735 N.E.2d 433, citing *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848. Under R.C. 2506.04, the court of appeals does not have the same "extensive power" to weigh the evidence as is granted to the common pleas court. Id. The appellate court's inquiry is limited to questions of law, including whether the trial court abused its discretion. Id. at 147–148, 735 N.E.2d 433. " 'Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.' " Id. at 147, 735 N.E.2d 433, quoting *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264.

{¶ 38} We note that although "[t]he [zoning] board's decision * * * is presumed to be valid, and the burden [on appeal] is upon the party contesting the board's determination to prove otherwise," *Klein v. Hamilton Cty. Bd. of Zoning Appeals* (1998), 128 Ohio App.3d 632, 636, 716 N.E.2d 268, where the decision of the BZA is supported only by beliefs or desires, and is not determined on the facts, the decision should be set aside. See *Libis v. Bd. of Zoning Appeals of Akron* (1972), 33 Ohio App.2d 94, 100, 62 O.O.2d 146, 292 N.E.2d 642.

{¶ 39} In their single assignment of error, appellants argue that the trial court erred when it reversed the BZA's denial of the Butzes' application for variances. Specifically, they argue that the BZA properly considered the various applicable factors in determining whether to grant the requested variances and that the common pleas court abused its discretion in substituting its opinion for that of the BZA.

{¶ 40} We note in our analysis that the variances at issue in the instant case are so-called "area variances," as opposed to "use variances." In *Kisil v. Sandusky*, 12 Ohio St.3d 30, 12 OBR 26, 465 N.E.2d 848, the Ohio Supreme Court held in the syllabus:

{¶ 41} "The standard for granting a variance which relates solely to area requirements should be a lesser standard than that applied to variances which relate to use. An application for an area variance need not establish unnecessary hardship; it is sufficient that the application show practical difficulties."

{¶ 42} In *Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, 23 OBR 212, 491 N.E.2d 692, the court clarified the "practical difficulties" test annunciated in *Kisil,* stating:

{¶ 43} "[A] property owner encounters 'practical difficulties' whenever an area zoning requirement (e.g., frontage, setback, height) unreasonably deprives him of a permitted use of his property. The key to this standard is whether the area zoning requirement, as applied to the property owner in question, is reasonable.

The practical difficulties standard differs from the unnecessary hardship standard normally applied in use variance cases, because no single factor controls in a determination of practical difficulties. A property owner is not denied the opportunity to establish practical difficulties, for example, simply because he purchased the property with knowledge of the zoning restrictions. (Citation omitted.)

{¶ 44} "The factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property include, but are not limited to: (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance." *Duncan* at 86, 23 OBR 212, 491 N.E.2d 692.

{¶ 45} We begin with a discussion of the first *Duncan* factor, which is whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance. Addressing this factor, the common pleas court disputed the BZA's finding that the property could yield a reasonable return without the variance if the existing residence were razed and rebuilt in compliance with zoning. The court was correct in stating that there is no evidence to support the BZA's finding that razing the cottage and rebuilding in compliance with zoning would yield a reasonable return.

{¶ 46} Although we are mindful that it is not for this court to weigh the evidence independently, we find it curious that neither the court nor the BZA so much as mentioned additional, undisputed evidence demonstrating that the existing structure could continue to be used as a small seasonal summer cottage and, thus, even without a variance, could constitute a beneficial use of the property.

{¶ 47} Despite this apparent omission, we conclude that it was not an abuse of discretion for the trial court to accord the totality of the evidence on this issue enough weight to militate in favor of the requested variances.

{¶ 48} The second *Duncan* factor requires a determination whether the requested variance is substantial. Here, the trial court disputed the BZA's

finding that the variance was substantial simply because it would allow a square footage increase of 150 percent.

{¶ 49} Upon its own examination of the applicable evidence, the trial court found that the requested variances amounted to nothing more than a three-foot setback, "which is consistent with every other neighboring property on Elm Ave. and the existing structure on the premises." The trial court further found that "there is evidence that the applicable sections of the [zoning] code relevant to this appeal have not previously been enforced against other applicants." Finally, the trial court pointed out that the BZA agreed with the Butzes' position that there exists adequate on-street parking.

{¶ 50} We do not find in our examination that the trial court abused its discretion in weighing the evidence and reaching its conclusions regarding the second *Duncan* factor.

{¶ 51} With respect to the third *Duncan* factor, the trial court found that the essential character of the neighborhood would not be affected and that adjoining properties would not suffer a substantial detriment as a result of the variances. In support of this finding, the court cited undisputed evidence demonstrating that the addition and proposed remodeling are consistent in size and parking area with other houses in the neighborhood.

{¶ 52} In addition, the court criticized as arbitrary and capricious the BZA's finding that although the variance does not affect the essential character of the neighborhood and there would be no detriment to adjoining lot owners, "unfortunately, the request violates zoning."

{¶ 53} The trial court did not abuse its discretion in evaluating the evidence and reaching its conclusions with regard to the third *Duncan* factor.

{¶ 54} Both the BZA and the trial court agreed that the variances would in no way adversely affect the delivery of governmental services. This was not error.

{¶ 55} The fifth *Duncan* factor addresses whether the property owner purchased the property with knowledge of the zoning restriction. The trial court found that the BZA's determination that the applicable zoning restrictions were in effect when the property was purchased, together with its recitation of the dates that the permits were issued and revoked, was nonresponsive and an arbitrary basis upon which to deny the variance.

{¶ 56} The trial court, in its analysis, concluded that "[t]he overwhelming evidence in this matter, both circumstantial and direct, is that the Appellants were not aware of the specific zoning restrictions, that the restrictions were not being enforced, that the plans were initially approved, and [that] a permit was issued to Butz which is all consistent with Appellants having no knowledge of the existing zoning restriction."

{¶ 57} Although we might not characterize the evidence regarding this factor to be "overwhelming" (if such were ours to decide), we do not find that the trial court abused its discretion in analyzing the substantiality of the evidence regarding the fifth *Duncan* factor.

{¶ 58} The sixth *Duncan* factor asks whether the property owner's predicament feasibly can be obviated through some method other than a variance. With respect to this factor, the trial court found that the BZA's decision that there is adequate on-street parking is supported by the evidence.

{¶ 59} The court strongly disagreed, however, with the BZA's finding that the Butzes had "other options" to prevent the predicament by razing and rebuilding the structure at the rear of the property. With respect to this finding, the trial court properly stated that there is no evidence to suggest that it is reasonably feasible to raze the cottage and rebuild at the rear of the lot. The court further noted that to the extent the setback and parking issues currently exist on the property, enforcement of the zoning code "will not remedy the zoning infractions."

{¶ 60} We find no abuse of discretion in the trial court's conclusions in connection with the sixth *Duncan* factor.

{¶ 61} Finally, we consider the seventh *Duncan* factor, addressing whether the spirit and intent behind the zoning requirements would be observed and substantial justice done by granting the variance.

{¶ 62} In observing the spirit of an ordinance and attempting to do substantial justice, "[a] zoning board of appeals or a reviewing court necessarily must weigh the competing interests of the property owner and the community." *Duncan*, 23 Ohio St.3d at 86, 23 OBR 212, 491 N.E.2d 692.

{¶ 63} We note in this analysis that "[a] variance is intended to permit amelioration of strict compliance of the zoning ordinance in individual cases. It is designed to afford protection and relief against unjust invasions of private property rights and to provide a flexible procedure for the protection of constitutional rights." *Consol. Mgt., Inc. v. Cleveland* (1983), 6 Ohio St.3d 238, 240, 6 OBR 307, 452 N.E.2d 1287.

{¶ 64} The BZA found that the spirit of zoning would not be observed by granting the variance, because the property "can and is being used." The trial court found the BZA's reasoning to be flawed and its conclusion erroneous, as both arbitrary and unsupported by the evidence.

{¶ 65} Here, the evidence shows that strict enforcement of the zoning code with the intent of curing existing nonconforming issues would necessarily cause the Butzes to raze their cottage and rebuild it further back on the property. The

evidence additionally shows that strict enforcement of the zoning code without the intent of curing existing nonconforming issues would result in no amelioration whatsoever of those issues. Certainly, it could reasonably be concluded in this case that the Butzes' interests outweighed the interests of the community.

{¶ 66} We do not find that the trial court abused its discretion in its conclusions regarding the seventh *Duncan* factor.

{¶ 67} Because the trial court did not abuse its discretion or otherwise err in reversing the BZA's denial of the variances, appellants' assignment of error is found not well taken.

{¶ 68} The judgment from which this appeal is taken is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

HANDWORK and KNEPPER, JJ., concur.