[Cite as *Mills v. Walnut Twp. Bd. of Zoning Appeals*, 2023-Ohio-4234.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| RONALD MILLS, | : | |
| | : | Case No. 22CA14 |
| Appellant-Appellant, | : | |
| | : | |
| | : | |
| v. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| WALNUT TOWNSHIP BOARD | : | |
| OF ZONING APPEALS, | : | |
| | : | |
| Appellee-Appellee. | : | **RELEASED: 11/16/2023** |
| | : | |

APPEARANCES:

Abigail N. Dalesandro and Kristin E. Rosan, Madison & Rosan, LLP, Columbus, Ohio, for Appellant.

Judy C. Wolford Pickaway County Prosecutor and Robert A. Chamberlain Assistant Pickaway County Prosecutor, Circleville, Ohio, for Appellee.

Wilkin, J.

{¶1} Appellant, Ronald Mills ("Mills"), is appealing a Pickaway County Court of Common Pleas judgment entry that affirmed the appellee's, Walnut Township Board of Zoning Appeals,' ("BZA") decision denying Mills' application for a zoning variance. Mills argues that the trial court's judgment is not supported by the evidence and the zoning ordinance is unconstitutional. After reviewing the parties' arguments, the record, and applicable law we find that the trial court's judgment is supported by a preponderance of reliable, probative, and substantial evidence and his constitutional claim has been waived. Therefore, we affirm its judgment.

I.      INTRODUCTION

{¶2} Mills purchased approximately 80 acres of property in Walnut Township, Pickaway County, Ohio for $599,000.00 from Roger Schneider.  Mills planned to divide the property into three approximate 23-acre lots and build a house on each lot with two of the houses sharing a single driveway.  However, Walnut Township zoning code section 13:05:02 required every house to have 200 feet of continuous road frontage.  Because of the unique "horseshoe" shape of his property, Mills could build only one house that would comply with the 200-foot-road-frontage requirement with the other two houses on a lot with 100 feet of road frontage and a shared driveway.  Consequently, he filed an application for a variance with the BZA that would allow one of the houses to have only 100 feet of road frontage, instead of the 200 feet that zoning required.  The BZA denied the variance.  The BZA denied his application.

{¶3} Mills filed a R.C. Chapter 2506 appeal of the BZA's denial to the Pickaway County Court of Common Pleas.  At the appeal hearing before the trial court, Mills testified that prior to his purchase he "looked every where [for possible zoning restrictions]," but found none.  However, Mills also admitted that he never reached out to the Walnut Township trustees in an attempt to learn of any restrictions.

{¶4} Mills testified that he did not learn of the road-frontage restriction until June 4th (the day that he closed on the property), or June 5th, while having a discussion with Walnut Township Trustees Warren Spangler and Roger Cook.  Mills claimed that he also received a call from Kevin Archer that day, who was

the Walnut Township zoning inspector. Archer also informed Mills of the zoning restriction problem.

{¶5} Archer testified that Spangler contacted him and informed him of his discussion with Mills about Mills' plan to build three houses on his property. Archer immediately called Mills and told him of the road-frontage restrictions. Archer testified that Mills' responded: "I'm buying 79 acres and I think I can do with it whatever I want." Archer stated that he could not remember the date of the call, but it was "somewhere in late summer early fall."

{¶6} Archer further testified that it was his understanding that in 2009, Walnut Township zoning was amended increasing the road-frontage requirement for a house from 150 feet to 200 feet. Archer stated that during his time as inspector, there had been no variances to the 200-foot frontage requirement granted.

{¶7} The next witness was Walnut Township Trustee Warren Spangler, who had been a trustee for more than 20 years and was familiar with Mills' property. He was also aware of the road-frontage requirement. Spangler testified that he had a discussion with Mills to make him aware of the frontage requirement. During their conversation, Mills told Spangler that he was "getting ready to close on [the property]."

{¶8} Spangler also testified that previously the road-frontage requirement per house was 150 feet, but the zoning was amended to 200 feet because "a lot of homes were being built, and still are for that matter, getting a lot of homes built that might preserve some of the farm ground and agricultural ground and spread

out some houses a little more." He claimed that granting a variance that would change the road-frontage requirement from 200 feet to 100 feet was significant. Spangler claimed that if Mills' variance was granted, others will seek the same variance.

{¶9} Last to testify was Walnut Township Trustee Roger Cook, who had been a trustee for 12 years. He stated that he was familiar with Mills' property. He also claimed that he was present with Spangler during the conversation that informed Mills of the 200-foot-road-frontage requirement. Cook believed that this discussion occurred prior to Mills closing on his property without further elaboration.

{¶10} The court then questioned Cook.

Court: "Do you think [Mills' property] would sell? Could he get his money back if he could only have two lots there and they were able if he sells those two lots, in your opinion"

Cook: "I don't - - I'm not for sure about that, but I don't know if he could or not with the current prices. Possibly."

Court: "Do you know what Schneider sold those other lots off there for? Didn't Dr. Bolender buy one?"

Cook: "Well, they were different sizes. My son lives up there right next to a couple of them."

Court: "Do you know what he was getting?"

Cook: "The one gentleman said that he had like five acres or possibly around three, he paid about between fifty/sixty thousand."

Court: "About $10,000 an acre."

Cook: "Yeah Um-hum."

**{¶11}** In resolving Mills' appeal, the trial court relied on *Duncan v. Middlefield*, 23 Ohio St. 3d 83, 491 N.E.2d 692 (1986), which sets out seven factors to be considered and weighed in determining whether a property owner seeking an area variance will encounter "practical difficulties" in the use of his property.  They include:

> (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (*e.g.,* water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.

*Id.*, syllabus.

**{¶12}** The trial court issued a judgment entry that reviewed all seven factors, and, with the exception of the fourth factor (delivery of government services), it found the remaining six factors weighed in favor of the BZA.  Therefore, the court affirmed the BZA's denial of Mills' application for the variance.

## II. ASSIGNMENTS OF ERROR

I.     THE TRIAL COURT ERRED BY AFFIRMING THE TOWNSHIP'S DENIAL OF OWNER'S VARIANCE REQUEST BECAUSE SUCH DENIAL WAS ARBITRARY, CAPRICIOUS, AND UNSUPPORTED BY A

PREPONDERENCE OF RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE

II.   THE TRIAL COURT ERRED BY AFFIRMING THE TOWNSHIP'S DENIAL OF OWNER'S VARIANCE REQUEST BECAUSE THE ZONING ORDINANCE IS UNCONSTITUTIONAL, AND ITS CONTINUED APPLICATION DOES NOT SUBSTANTIALLY SERVE ANY LEGITIMATE GOVERNMENTAL INTEREST

### III. ASSIGNMENT OF ERROR I

{¶13} Mills argues that the trial court abused its discretion in finding that six of the seven *Duncan* factors weighed in favor of affirming the BZA's denial of his requested variance.

### A.  *Duncan* Factors

1.  Whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance

{¶14} Under the first *Duncan* factor, Mills claims the trial court erred in finding that his property could be sold for a reasonable return.  The trial court erroneously relied on the testimony of Cook in finding that other properties in the area had sold for $10,000 per acre.  Instead, Mills claims that the court improperly based this estimate on its own knowledge of "differently sized lots."

{¶15} Mills also argues that there was no beneficial use of the property without the variance because he would be "one house short of his plan for his family to all reside together [in three homes]."  Mills maintains that *his* plan could not be accomplished without the variance.

{¶16} Therefore, Mills claims that the trial court's decision finding the first *Duncan* factor in favor of the BZA was not supported by the evidence.

{¶17} The BZA argues that Mills' property could be sold for a profit, and can otherwise be used in a beneficial manner without the variance. There was testimony that Mills could get $10,000 per acre, which would have resulted in a sale price of $800,000 - a $200,000 profit. Alternatively, the BZA argues that Mills could build two houses and rent the rest of the land.

{¶18} Thus, the trial court's finding that Mills' property could provide a reasonable return or have a beneficial use without the variance is supported by the evidence.

2.  Whether the variance is substantial

{¶19} Under the second *Duncan* factor, Mills claims there was no evidence to support the BZA's decision that the variance was substantial. Mills argues that the determination of whether a variance is "substantial is not a rote recitation or comparison of percentages but a determination of substantive factors[,]" relying on *Carrolls v. BZA City of Willoughby*, 11th Dist. Lake No. 2005-L-110, 2006-Ohio-3411. Mills maintains that the evidence shows that there were nearby lots with less than 200 feet of road frontage. He also claims that the BZA's witnesses – Spangler, Cook, and Archer – offered no support for the proposition that the variance was substantial. Therefore, Mills asserts that the trial court "failed to weigh many substantial factors as in *Carrolls*."

{¶18} Accordingly, the trial court erred in finding the second *Duncan* factor in favor of the BZA.

{¶19} The BZA claims that the variance is substantial. The zoning requires 200 feet of road frontage for every house built on a property. The

requested variance would reduce the road frontage by half to 100 feet. Further,

all three witnesses – Archer, Spangler, and Cook - testified that the variance was

substantial based on their experience and knowledge. Spangler also testified

that if the variance is granted it would expose the township to similar variance

requests when new houses are built. Thus, under the second *Duncan* factor, the

evidence supports that the requested variance is "substantial."

> 3. Whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance

**{¶20}** Under the third *Duncan* factor, Mills maintains that a variance would

not change the essential character of the neighborhood and the adjoining

property owners would not suffer a substantial detriment. Mills claims that the

trial court relied on speculative and unsubstantiated testimony that the variance

would be a substantial detriment to the adjoining landowners.

**{¶21}** Mills also claims that his neighbors were "excited" and "happy with

what [Mills] is doing." Mills argues that his plan to build three houses with the

variance still complies with the purpose of the zoning, which is to "spread houses

out a little bit."

**{¶22}** Therefore, Mills maintains that the trial court erred in finding the third

*Duncan* factor in favor of the BZA.

**{¶23}** The BZA argues that granting the variance will substantially alter the

essential character of the neighborhood and the adjoining properties will suffer a

detrimental result. Spangler testified that in 2009, Walnut Township zoning was

amended from requiring 150 feet of road frontage to 200 feet because many

homes were being built in the area so the increase in frontage was necessary to preserve some of the agricultural ground and to spread out the houses. The BZA acknowledges that although there are some lots with homes that have less than 200 feet of road frontage, Spangler testified that these homes were built prior to the 2009 zoning change.

**{¶24}** Therefore, the BZA maintains that the evidence supports that granting a variance will substantially alter the essential character of the neighborhood.

4. Whether the variance would adversely affect the delivery of governmental services (*e.g.,* water, sewer, garbage)

**¶25}** Both parties agree that granting the variance would not affect the delivery of government services.

5. Whether the property owner purchased the property with knowledge of the zoning restriction

**{¶26}** Under the fifth *Duncan* factor, Mills claims that there was no evidence to support that he purchased the property with knowledge of the zoning restriction requiring each home to have 200 feet of road frontage. Mills claims he did not become aware of the restriction until June 4th (the day that he closed on the property) or 5th after having a discussion with trustees Cook and Spangler.

**{¶27}** Mills' argues that the trial court's reliance on Archer's testimony supporting that he (Mills) knew of the zoning restriction before he purchased the property is misplaced. Mills points out Archer testified that he informed Mills of the zoning restriction in late "summer or early fall." Mills claims that June 4th or 5th is not late summer or early fall.

**{¶28}** Mills also maintains that the court's reliance on Spangler and Archer's testimony that he knew of the restriction before he purchased the property conflicts with Mills' testimony that he was unaware of the restriction before he purchased the property. Therefore, he claims that the court's decision finding the fifth *Duncan* factor in favor of the BZA is not supported by the evidence.

**{¶29}** The BZA claims that testimony from Spangler, Cook, and Archer support the conclusion that Mills had knowledge of the zoning restriction prior to his purchase. Archer testified that he had a discussion with Mills and mentioned the 200-foot-frontage requirement. Regarding that discussion, Archer testified that Mills said, "I'm buying it and I think I can do with it whatever I want to do." Further, Spangler and Cook testified that they had a discussion with Mills about the zoning restriction five to seven days before Mills closed on the property. Specifically, Spangler claimed that during his discussion with Mills, he (Mills) "stated that he was closing in, I can't remember, five, seven days after this conversation, he was getting ready to close on it."

**{¶30}** Thus, the BZA maintains that the evidence supports the conclusion that Mills was aware of the 200-foot road-frontage requirement before he purchased the property.

### 6. Whether the property owner's predicament feasibly can be obviated through some method other than a variance

**{¶31}** Under the sixth *Duncan* factor, Mills argues that whether his predicament feasibly can be obviated through some method other than a variance is not supported by the evidence. He claims that if the court can rely on

the alternatives it relied upon in resolving the first *Duncan* factor (*e.g.,* selling the property or building two homes and renting the rest of the land), then this factor will never be found in favor of the property owner. Thus, Mills contends that the trial court's decision in favor of the BZA on the sixth *Duncan* factor is unsupported by the evidence.

**{¶32}** The BZA claims that Mills' predicament can be obviated through methods other than a variance. One option would be for Mills to build two homes and rent the remaining land. The second is that Mills could sell the property for a profit and purchase a different property where he could build three homes within the zoning requirements.

**{¶33}** Therefore, the BZA claims that the evidence supports that Mills' predicament can be obviated without a variance.

7. Whether the spirit and intent behind zoning requirement would be observed and substantial justice done by granting the variance

**{¶34}** Finally, Mills claims that the spirit and intent of the zoning variance as set forth in the seventh factor of the *Duncan* test would be served by granting the variance. Mills argues that it is unclear how a road frontage requirement is directly related to preserving farmland and spreading houses. Mills stated that one of his homes would not even be visible from the road. Thus, Mills argues that granting his requested variance of 100 feet of road frontage will not affect the spirit and intent behind the zoning requirement.

**{¶35}** The BZA maintains that granting the variance will violate the spirit and intent of the restriction requiring 200 feet of road frontage for a home. Spangler testified that many new homes were being built in the area and the

zoning restriction "might preserve some of the farm ground, agricultural ground and spread out the homes a little." Therefore, the BZA argues that Mills' own plans for building a home with only 100 feet of road frontage violates the spirit and intent of keeping some farm ground and spreading out homes.

{¶36} Thus, the BZA argues that the trial court's decision affirming the BZA's denial of Mills' variance is supported by the evidence.

B. Law

1. *Duncan v. Middlefield*, 23 Ohio St.3d 83

{¶37} Both parties and the trial court rely on *Duncan* as setting out the proper test to evaluate the denial of an *area variance* to zoning enacted by a *township*. 23 Ohio St.3d 83, 85-86, 491 N.E.2d 692 (1986). However, this court has never cited *Duncan*, let alone applied it in a zoning appeal. Therefore, we begin recitation of the law by considering the applicability of *Duncan* in this case.

{¶38} The Ohio Supreme Court has defined two standards of review depending on the type of variance at issue: (1) the "practical difficulties" standard for granting a variance that relates only to area requirements and (2) the "unnecessary hardship" standard for granting a variance that relates to a use variance. *Kisil v. Sandusky*, 12 Ohio St.3d 30, 32–33, 465 N.E.2d 848 (1983); *Duncan,* at 85-86, 491 N.E.2d 692 (1986). However, "[Ohio] [a]ppellate districts are not consistent as to whether townships must apply the separate standards for use and area variances because *Kisil* and *Duncan* involved municipalities not townships." *Jones v. Hubbard Twp. Bd. of Zoning Appeals,* 11th Dist. Trumbull No. 2014-T-0041, 2015-Ohio-2300, ¶ 11.

.        **{¶39}** "One view holds 'that the General Assembly has limited the power

of townships to grant a variance to only those cases in which the zoning

resolution causes unnecessary hardship to the landowner.' " *Id.*, quoting *Dsuban*

*v. Union Twp. Bd. of Zoning Appeals,* 140 Ohio App.3d 602, 607, 748 N.E.2d 597

(12th Dist.2000).  "This approach does not distinguish between an area and a

use variance.  That is because R.C. 519.14, which outlines the powers of a

township board of zoning appeals, permits variances only where 'literal

enforcement of the resolution will result in unnecessary hardship.' " (Citation

omitted) *Id.*, quoting *Dsuban* at 607.  This approach is followed by a minority of

Ohio's appellate districts.  *See Cole v. Bd. of Zoning Appeals for Marion Twp.,* 39

Ohio App.2d 177, 317 N.E.2d 65 (3d Dist.1973), paragraph two of the syllabus;

*Zickefoose v. Green Twp. Bd. of Zoning Appeals,* 5th Dist. Ashland No. 99-COA-

01307, 2000 WL 1289429 (Sept. 7, 2000), and *Dsuban.*

**{¶40}** "The other approach applies the separate standards for use and

area variances to townships." *Jones* 11th Dist. Trumbull No. 2014-T-0041, 2015-

Ohio-2300 at ¶ 12, citing *Hebeler v. Colerain Twp. Bd. of Zoning Appeals,* 116

Ohio App.3d 182, 186-87, 687 N.E.2d 324 (1st Dist.1997).  In adopting this

approach, the Eleven District Court of Appeals reasoned:

> "Although both *Kisil* and *Duncan* involved municipalities rather than
> townships, this court believes that the Supreme Court intended a
> unified standard of review in area variance cases notwithstanding the
> language contained in R.C. 519.14. This belief is based upon the fact
> that the underlying *character type* of an 'area variance or 'use'
> variance *does not change depending upon whether application is
> made to a municipal or township authority.* Regardless of the
> distinctions between municipalities and townships, one simple fact
> remains the same: *area variances do not alter the character of the*

> *zoning district and neighborhood considerations are less significant than in use variance cases.*" (Emphasis sic.)

*Id*. quoting *Zangara v. Twp. Trustees of Chester Twp.,* 77 Ohio App.3d 56, 59, 601 N.E.2d 77 (11th Dist.1991).

A majority of Ohio appellate districts have adopted this approach. *See Hebeler*, 116 Ohio App. 3d at 186, 687 N.E.2d 324, 327 (1st Dist.1997); *Stickelman v. Harrison Twp. Bd. of Zoning Appeals*, 2002-Ohio-2785, 772 N.E.2d 683, ¶ 13 (2d Dist.); *Whiteco Outdoor Advert. v. Violet Twp., Bd. of Zoning Appeals*, 5th Dist. Fairfield No. 96CA70, 1997 WL 219159, *2 (March 16, 1997); *Butz v. Danbury Twp.,* 2010-Ohio-179, 926 N.E.2d 319, ¶ 16 (6th Dist.); *James v. Austintown Twp. Zoning Appeals Bd.,* 7th Dist. Mahoning No. 13MA179, 2015-Ohio-2330, ¶ 20; *In re Liverpool Twp. Zoning Bd. of Appeals*, 9th Dist. Medina No. 2657-M, 2657-M, 1997 WL 760704, *6 (Nov. 19, 1997); and *Jones*, 11th Dist. Trumbull No. 2014-T-0041, 2015-Ohio-2300, ¶ 13.

{¶41} We agree with the reasoning in *Jones* and find that the latter approach adopted by a majority of Ohio appellate districts applicable herein. Consequently, we find that the parties and trial court properly relied on *Duncan* in analyzing Mills' appeal.

### 2. Standard of Review

{¶42} A decision by a board of zoning appeals may be appealed to a court of common pleas pursuant to R.C. Chapter 2506. *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St. 3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 14.

> R.C. Chapter 2506 confers on the common pleas courts the power to examine the whole record, make factual and legal determinations,

and reverse the board's decision if it is not supported by a preponderance of substantial, reliable, and probative evidence. Although a hearing before a common pleas court pursuant to R.C. 2506.01 is not a de novo review, "it often in fact resembles a de novo proceeding." (Citation omitted)

*Id.* at ¶ 24, quoting *Cincinnati Bell v. Glendale*, 42 Ohio St.2d 368, 370, 328 N.E.2d 808 (1975).

**{¶43}** In a R.C. 2506.04 appeal, "the trial court [is] required * * * to assess the credibility of the witnesses as well as the probative character of the evidence, and to determine the weight to be given to that evidence." *Fulmer v. W. Licking Joint Fire Dist.*, 5th Licking No. 13-CA-36, 2014-Ohio-82, ¶ 16; *Orange Barrel Media v. Columbus*, 10th Dist. No. 12AP-447, 2012-Ohio-6205, ¶ 8.

**{¶44}** "The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. "Consistent with its findings, the court of common pleas may then "affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court." *Id.*

**{¶45}** An appellate court's review of a R.C. Chapter 2506 is "more limited in scope than the court of common pleas." *Smith v. Nelsonville*, 2023-Ohio-2844, __ N.E.2d __ , ¶ 11 ( 4th Dist.), citing *Three Wide Entertainment v. Athens Bd. of Zoning Appeals*, 2011-Ohio-2304, 954 N.E.2d 191, ¶ 9 (4th Dist.). " 'The court of appeals reviews the common pleas court's judgment only on questions of law and does not have the same extensive authority to weigh the evidence.' " *Devol*

*v. Logan,* 4th Dist. Hocking No. 21CA4, 2021-Ohio-4164, ¶ 14, quoting

*Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125,

2014-Ohio-4650, 28 N.E.3d 1182, ¶ 14, citing *Henley v. Youngstown Bd. of*

*Zoning Appeals,* 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). " 'Within the

ambit of questions of law for appellate-court review is whether the common pleas

court abused its discretion [and] [t]he court of appeals must affirm unless it finds,

as a matter of law, that the trial court's decision is not supported by a

preponderance of reliable, probative, and substantial evidence.' " (Brackets sic.)

*Id.*, quoting *Independence* at ¶ 13. " 'In this context, a reversal 'as a matter of

law' can occur only when, having viewed the evidence most favorably to the

decision, there are no facts to support' the trial court's decision." *Austin v.*

*Cuyahoga Metro. Hous. Auth.*, 8th Dist. Cuyahoga No. 107247, 2019-Ohio-636,

¶ 23, quoting *Kurutz v. Cleveland*, 8th Dist. Cuyahoga No. 105899, 2018-Ohio-

2398, ¶ 8. As the Supreme Court stated in *Cleveland Clinic Found. v Bd. of*

*Zoning Appeals*, "the standard of review for courts of appeals in administrative

appeals is designed to strongly favor affirmance. It permits reversal only when

the common pleas court errs in its application or interpretation of the law or its

decision is unsupported by a preponderance of the evidence as a matter of law."

141 Ohio St. 3d 318, 2014-Ohio-4809, 23 N.E.3d 1161at ¶ 30.

### 3. Variances from Township Zoning

{¶46} A variance permits a property owner to use his or her property in a

manner that is prohibited by zoning regulations. *Nunamaker v. Jerusalem Twp.*

*Bd. of Zoning Appeals*, 2 Ohio St.3d 115, 118, 443 N.E.2d 172 (1982). There are

two types of variances, area variances and use variances. *Schomaeker v. First*

*Nat. Bank of Ottawa*, 66 Ohio St. 2d 304, 306, 421 N.E.2d 530 (1981).

> A use variance permits land uses for purposes other than those
> permitted in the district as prescribed in the relevant regulation.
> An example of a use variance is a commercial use in a residential
> district. Area variances do not involve uses, but rather structural
> or lot restrictions. An example of an area variance is relaxation of
> setback lines or height restrictions.

*Id.* at 307.

The instant case involves an area variance because it seeks a "relaxation" in the

length of the 200-foot road-frontage restriction.

{¶47} In *Kisil,* the Court "held that the standard for granting a variance for

area requirements is a lesser standard than when a use variance is at stake: the

applicant need only show practical difficulties rather than unnecessary hardship."

12 Ohio St.3d 30, 465 N.E.2d 848 at syllabus. "[A] property owner encounters

'practical difficulties' whenever the area zoning requirement unreasonably

deprives the property owner of a permitted use of the property." *Hebeler*, 116

Ohio App. 3d at 187, 687 N.E.2d 324 (1st Dist.1997), citing *Duncan*, 23 Ohio St.

3d at 86, 491 N.E.2d 692 (1986). In an apparent effort to elaborate the "practical

difficulties" test, shortly after *Kisil* was decided, the Court authored *Duncan*,

which, as we recognized infra, set out seven

> factors to be considered and weighed in determining whether a
> property owner seeking an area variance has encountered
> practical difficulties in the use of his property include, but are not
> limited to: (1) whether the property in question will yield a
> reasonable return or whether there can be any beneficial use of
> the property without the variance; (2) whether the variance is
> substantial; (3) whether the essential character of the

neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (*e.g.,* water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.

23 Ohio St. 3d at 86, 491 N.E.2d 692 (1986), citing, 3 Anderson, American Law of Zoning (2 Ed.1977), Variances, Section 18.47 *et seq.; Wachsberger v. Michalis* (1959), 19 Misc.2d 909, 191 N.Y.S.2d 621.

{¶48} "These factors are to be weighed to determine whether the existing area zoning requirement at issue, i.e., the frontage requirement, as applied to the property owner in question, is reasonable and, thus, whether a variance should be granted.  No single factor is determinative." *Baker v. Mad River Twp. Bd. of Zoning Appeals*, 2d Champaign No. 2008 CA 16, 2009-Ohio-3121, ¶ 63, citing *Duncan* at ¶ 86; *Winfield v. Painesville,* 11th Dist. Lake No.2004-L-053, 2005-Ohio-3778, ¶ 28.  (There is no "requirement that the *Duncan* factors be applied mathematically.").  "Different facts will require that different questions be asked and different factors to be considered, sometimes more, sometimes fewer, but in no two cases must the factors considered necessarily be the same." *Trent v. German Twp. Bd. of Zoning Appeals*, 144 Ohio App.3d 7, 18, 759 N.E.2d 421 (2d 2001).

C. Analysis

{¶49} In analyzing the first factor under *Duncan*, the trial court found that Mills could get a "reasonable return" or had an alternate "beneficial use" for his

property. The court determined that Mills could sell his property for a "significant profit" and buy another property to build his three houses. Alternatively, the court found that Mills could build two houses on his property and rent the remaining land. We conclude that these findings are supported by the testimony of Walnut Township Trustee Roger Cook, who offered his opinion regarding the sale price of other properties in the area that had sold. Similarly, in analyzing the sixth factor, the trial court further found these options also supported that Mills could "obviate" his "predicament" by taking advantage of one of the alternatives.

{¶50} In considering the second factor, the trial court also found that Mills' variance was "substantial" because it sought to reduce the road-frontage requirement in half, from 200 feet to 100 feet. The court's conclusion here is also supported by the testimony of Spangler who opined that Mills' variance was substantial and subjected other properties to the same reduction. Further, of the nine lots discussed by Mills at the hearing that had less than the 200-foot-frontage-requirement, none had as little as 100 feet of road frontage, which is the road frontage Mills' variance was seeking. Of these lots, the one having the least amount of road frontage measured 151.2 feet, which was still almost 50 feet more than the frontage that Mills was seeking in his variance.

{¶51} In considering the third factor, the trial court found that the variance would substantially alter the essential character of the neighborhood. Noting that variances "run" with the land, the court found that in the future nothing would prevent the owner of the 100-foot frontage property from installing a driveway even though there are no homes in the area with 100 feet of road frontage that

have a driveway, which "would be a first "[in the neighborhood]." The court also pointed out that of the lots that Mills identified that had less than 200 feet of road frontage, there was no evidence that those houses were built after 2009 when the road frontage requirement increased from 150 feet to 200 feet. Finally, Spangler testified that the purpose of the 200-foot-road-frontage requirement was to preserve agricultural/farmland and spread out the houses, and zoning inspector Archer testified that under the current zoning, no variances had been granted.

{¶52} In regard to the fourth factor, the trial court noted that the parties agreed that the proposed variance would not adversely affect the delivery of governmental services.

{¶53} In considering the fifth factor, the trial court found that Mills knew of the road-frontage restriction prior to purchasing the property based upon zoning inspector Archer's testimony, who stated that when he informed Mills about the restriction, Mills replied: "*I'm buying* the property and I think I can do with it whatever I want to do." Further, Spangler testified that when he was talking to Mills about the restriction, Mills told him that he was "*getting ready to close* on [the property]." (Emphasis added).

{¶54} Finally, in considering the seventh factor, the court found that the "spirit and intent" of the 200-foot road frontage restriction would not be observed if the variance was granted. This finding was supported by Spangler who testified that a lot of homes are being built in the township and the zoning might preserve some of the farm ground and spread out houses a little.

{¶55} Having reviewed the record, we find that the trial court's resolution that six of the seven *Duncan* factors weighed in favor of the BZA is supported by a preponderance of reliable, probative, and substantial evidence. Therefore, we affirm the trial court's judgment that upheld the denial of Mills' application for a variance. Accordingly, we overrule Mills' first assignment of error.

## IV. ASSIGNMENT OF ERROR II

{¶56} Mills claims that the 200-foot road frontage zoning requirement herein violates due process when applied to his property. Mills claims that there are nine properties near his that have road frontages that are less than 200 feet. He also argues that the character of the surrounding properties is similar to the character of his property that would result if his variance was granted. For example, his plan for 23-acre lots would preserve the agricultural nature of the land and spread out the houses. Under these circumstances, Mills claims that the BZA was acting in a discriminatory fashion imposing the 200-foot restriction on his property rather than granting the variance. Therefore, Mills claims the BZA violated his constitutional rights by denying his application for a variance.

{¶57} The BZA first argues that because Mills did not raise the constitutionality of the zoning at the hearing on Mills' variance, the argument is waived. Even if the issue is not waived, the BZA claims that the zoning here is constitutional. While the nature of the surrounding properties are important, townships have authority to determine zoning regulations. Here the township amended its zoning years ago to maintain the agricultural integrity of the township.

A. Law

{¶58} Generally speaking, "[a] litigant who fails to raise an argument before the trial court forfeits the right to raise that issue on appeal." *New Holland v. Murphy*, 2021-Ohio-2671, 1176 N.E.3d 309, ¶ 22 (4th Dist.), citing *Independence*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182at ¶ 30 (stating that "an appellant generally may not raise an argument on appeal that the appellant has not raised in the lower courts"). Nevertheless, a court of appeals "may * * * consider a forfeited argument using a plain-error analysis." *Id* at ¶ 23, citing *Risner v. Ohio Dept. of Nat. Resources*, Ohio Div. of Wildlife, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 27 ("stating that reviewing court has discretion to consider forfeited constitutional challenges").

{¶59} However, an appellate court " 'must proceed with the utmost caution' when applying the plain error doctrine in civil cases." *Id*., citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). " 'The plain error doctrine should never be applied to reverse a civil judgment * * * to allow litigation of issues which could easily have been raised and determined in the initial trial.' " [Brackets removed, ellipses sic.] *Id.* quoting *Goldfuss* at 122, 679 N.E.2d 1099. "The issue of the constitutionality of a zoning ordinance cannot be administratively determined but can be raised by a landowner who appeals an adverse administrative decision to the Court of Common Pleas pursuant to R. C. Chapter 2506." *Moss v. The Austintown Twp. Bd. of Zoning Appeal*, 7th Dist. Mahoning No. 76 C.A. 89, 1976 WL 188649, *2 (Dec. 20, 1976), citing *Mobil Oil*

*Corp. v. Rocky River*, 38 Ohio St. 2d 23, 26, 309 N.E.2d 900 (1974).

B. Analysis

**{¶60}** Mills could have raised an as-applied constitutional challenge to the zoning at issue in his R.C. 2506 appeal to the common pleas court, but did not. Consequently, in exercising our discretion, we decline to consider whether Mills' failure to raise his constitutional claims in the trial court was plain error. Therefore, we find that Mills has waived his constitutional claim.  Accordingly, we overrule Mills' second assignment of error.

V. CONCLUSION

**{¶61}** We overrule both of Mills' assignments of error.  Accordingly, the judgment of the Pickaway County Court of Common Pleas is affirmed.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**